TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING









NO. 03-00-00168-CV






Pete Smith, Appellant



v.



James E. Nelson, (1) State Commissioner of Education, in his Official Capacity Only;


and Zapata County Independent School District, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 98-13924, HONORABLE PAUL R. DAVIS, JUDGE PRESIDING







 Pete Smith signed a contract with Zapata County Independent School District to serve
as a high school football coach and athletic coordinator. Mid-year he was reassigned, without a
change in pay, to serve as a physical education teacher in an elementary school. When the school
district denied his grievance seeking reinstatement, Smith sought to appeal to the State
Commissioner of Education. The Commissioner may hear a grievance regarding a written
employment contract between a school district and its employee if a violation of the contract "causes
or would cause monetary harm to the employee." See Tex. Educ. Code Ann. § 7.057(a)(2)(B) (West
1996). The Commissioner dismissed Smith's appeal, finding that the alleged violation of his
contract did not cause him monetary harm. The district court affirmed that decision. We first
affirmed that ruling on the ground that Smith failed to allege facts affirmatively demonstrating
monetary harm. (Opinion dated January 11, 2001.) On motion for rehearing, we recognized that the
issue of monetary harm had been presented to the Commissioner and held that he erred in dismissing
Smith's appeal for lack of jurisdiction. (Opinion dated March 15, 2001.) However, we granted the
motion for rehearing without receiving or seeking a response from appellees, as required by Rule
49.2 of the Texas Rules of Appellate Procedure. See Tex. R. App. P. 49.2. That provoked a second
motion for rehearing from appellees who asked us to reconsider the jurisdictional question, which
we have done. Now, a majority of the court holds that the issue of monetary harm was properly
before the Commissioner and that the Commissioner correctly determined that the contract violation
of which Smith complains did not cause him monetary harm as contemplated by section
7.057(a)(2)(B) of the Education Code. We withdraw our earlier opinion and judgment dated March
15, 2001, and substitute this opinion in its stead. We affirm the district court's judgment affirming
the Commissioner's order dismissing Smith's appeal for want of jurisdiction.


FACTUAL AND PROCEDURAL BACKGROUND


 Smith signed a three-year contract with the school district to be high school athletic
coordinator and head football coach from July 1997 through June 2000. The contract provided that
Smith would be "subject to assignment and reassignment of positions or duties, additional duties,
changes in responsibilities or work, transfers, or reclassification at any time during the contract
term." It further provided that "[n]o right of tenure nor any other contractual obligation, other
expectancy of continued employment, or claim of entitlement is created beyond the contract term."

 In October 1997, Smith was relieved of his coaching duties and reassigned as a
physical education teacher at Zapata South Elementary School. The district did not change Smith's
pay as a result of the reassignment. Smith filed an administrative grievance, alleging that "[n]othing
in the contract or elsewhere authorizes [his] purported reassignment to classroom teacher," and that
he had not received notice of any deficiencies in his performance, had not been given an opportunity
to respond to any allegations that led to his reassignment, and was "given no due process prior to"
his reassignment. Smith contended he had been unlawfully reassigned and sought reinstatement as
head football coach. Following a grievance conference, the district superintendent denied Smith's
grievance, finding that the contract allowed for Smith's reassignment and that reinstatement was "not
a viable option."

 After the district's board of trustees denied his grievance in January 1998, Smith filed
a petition for review with the Commissioner, contending the reassignment violated his contract and
asking to be reinstated. The district answered Smith's petition, arguing the Commissioner lacked
jurisdiction under section 7.057 because Smith had not pled that he had suffered any monetary harm. 
Smith responded by attaching as proof of monetary harm his affidavit and the affidavits of two high
school football coaches and the executive director of the Texas High School Coaches Association,
all stating that Smith's removal as head football coach and athletic director and reassignment as
elementary school physical education teacher would harm his prospects of getting another coaching
contract in the future. The Commissioner considered this evidence of monetary harm, as required
by Bland Independent School District v. Blue, 34 S.W.3d 547, 555 (Tex. 2000), in determining
whether he had jurisdiction to hear the appeal. 

 The Commissioner determined that he lacked jurisdiction to hear the appeal. He
noted that contract law allows recovery for "natural, probable, and foreseeable" consequences of a
breach and "when a contractual breach would cause monetary harm." Because Texas law does not
allow recovery of lost earning capacity for breach of a contract, the Commissioner concluded that
"lost earning capacity is not a natural, probable, and foreseeable loss [or] an expected result of a
breach of contract." The Commissioner also noted that Smith could not recover lost earning capacity
damages due to the district's sovereign immunity from tort claims. Smith sought judicial review of
the Commissioner's dismissal, (2) and following a hearing, the district court affirmed the
Commissioner's decision. Smith then sought review in this Court.


COMMISSIONER'S JURISDICTION


 Before 1995, any person aggrieved by the school laws or an action or decision by any
school board or board of trustees could appeal to the Commissioner. See Act of June 6, 1990, 71st
Leg., 6th C.S., ch. 1, art. II, § 2.22, 1990 Tex. Gen. Laws 1, 22 (formerly Tex. Educ. Code Ann.
§ 11.13, since amended); Act of June 30, 1984, 68th Leg., 2d C.S., ch. 28, art. I, part D, § 3, 1984
Tex. Gen. Laws 117, 129 (same). The statute was then amended to limit the right of teachers and
other employees to appeal to the Commissioner:



§ 7.057. Appeals


(a) Except as provided by Subsection (e), a person may appeal in writing to the
commissioner if the person is aggrieved by:


 (1) the school laws of this state; or


 (2) actions or decisions of any school district board of trustees that violate:


 (A) the school laws of this state; or


 (B) a provision of a written employment contract between the school
district and a school district employee, if a violation causes or would
cause monetary harm to the employee.



Tex. Educ. Code Ann. § 7.057(a) (West 1996); see Act of May 27, 1995, 74th Leg., R.S., ch. 260,
§ 1, 1995 Tex. Gen. Laws 2207, 2215 (amending and recodifying section 11.13 as section 7.057).

 In this case, the facts are undisputed and the only question is whether the
Commissioner correctly interpreted this statute as amended. While the Commissioner's
interpretation of his jurisdiction under this section is not controlling, it does merit serious
consideration if it is reasonable and does not contradict the plain language of the statute. Dodd v.
Meno, 870 S.W.2d 4, 7 (Tex. 1994); Spring Indep. Sch. Dist. v. Dillon, 683 S.W.2d 832, 841 (Tex.
App.--Austin 1984, no writ). 

 The Commissioner has jurisdiction to hear a grievance when the alleged violation of
an employment contract causes or would cause monetary harm. The only monetary harm Smith
alleged was a future loss of earning capacity, a proper measure of damages for a tort action but not
for a contract violation. Damages flowing from a breach of contract are governed by different
theories than are tort damages. Contract damages award the non-breaching party the value of the
expected contractual bargain, while tort damages compensate an injured party for loss caused by the
alleged tort. See P. G. Lake, Inc. v. Sheffield, 438 S.W.2d 952, 955 (Tex. Civ. App.--Tyler 1969,
writ ref'd n.r.e.); 28 Tex. Jur. 3d Damages § 74 (1996). The Commissioner correctly noted that a
school district cannot be held liable for tort damages. Barr v. Bernhard, 562 S.W.2d 844, 846 (Tex.
1978). Moreover, the Commissioner correctly disregarded future loss of earning capacity as a
monetary harm that might be caused by a violation of a teacher's employment contract.

 Smith does not claim that his reassignment will diminish the economic benefit he
bargained for under his present employment contract; he cannot assert such a claim because his
salary was not reduced. Instead, he claims he will suffer monetary harm in the future because he will
likely be unable to enter into new employment contracts as a high school coach. To appeal to the
Commissioner under section 7.057, a teacher must allege that he has suffered or will suffer monetary
harm in the context of the contract that has been violated, not that he may suffer harm from contracts
that he may or may not secure in the future. See Tex. Educ. Code Ann. § 7.057(a)(2)(B). We affirm
the Commissioner's dismissal because Smith did not allege monetary harm that was caused by a
failure to receive the economic benefit for which he had bargained under the terms of his present
employment contract. Nothing in section 7.057(a)(2)(B) refers to future monetary losses under other
contracts.

 This decision concerns Smith's right to appeal his reassignment, not his right to
recover for his alleged loss of earning capacity. Indeed, Smith seeks only reinstatement, not
monetary damages. He alleges monetary harm solely to avoid the restriction on appeals set forth in
section 7.057. However, there is no automatic right to appeal an administrative decision that does
not violate the appealing party's constitutional rights; such a right to appeal exists only if
legislatively granted. See Firemen's & Policemen's Civil Serv. Comm'n v. Kennedy, 514 S.W.2d
237, 239 (Tex. 1974); United Indep. Sch. Dist. v. Gonzalez, 911 S.W.2d 118, 122 (Tex. App.--San
Antonio 1995), writ denied per curiam, 940 S.W.2d 593 (Tex. 1996). In 1995, the legislature
significantly restricted a teacher's right to appeal adverse school district decisions. See Act of May
27, 1995, 74th Leg., R.S., ch. 260, § 1, 1995 Tex. Gen. Laws 2207, 2215. Before a grievance can
be brought to the Commissioner, the incident complained of must violate a school law or breach a
written employment contract in a way that causes or would cause monetary harm. Tex. Educ. Code
Ann. § 7.057(a). This limitation of the right to appeal may deprive teachers of meaningful review
of many school district decisions, but that is a matter left to the discretion of the legislature. This
Court must interpret the intent of the legislature as expressed in the plain language of a statute; we
do not sit to assess the wisdom or desirability of the legislative act. There is no question that by
drafting section 7.057 the legislature intended to limit the number of grievances that the
Commissioner could hear. (3)


 Smith would expand "monetary harm" as used in section 7.057 to include lost earning
capacity or injury to reputation, measures not traditionally used to assess harm flowing from a breach
of contract. Under this definition, any employee of a school district could allege some future or
speculative monetary harm associated with an adverse school district decision in order to bring the
grievance before the Commissioner. Allowing employees to "create" jurisdiction under section
7.057(a)(2)(B) by alleging monetary harm not directly caused by a violation of an employment
contract, damages they do not even seek to recover, would thwart the legislature's attempt to limit
appeals to the Commissioner. 


CONCLUSION


 To confer jurisdiction on the Commissioner to hear a grievance, an employee must
allege monetary harm reflecting a loss of the economic benefit of the bargain under his written
employment contract. A loss of future earning capacity is not the kind of monetary harm
contemplated by section 7.057(a)(2)(B). The Commissioner properly found he lacked jurisdiction
over Smith's appeal, and the district court properly affirmed that decision. We affirm the district
court's judgment.



 __________________________________________

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: August 9, 2001

Publish

TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING









NO. 03-00-00168-CV






Pete Smith, Appellant



v.



James E. Nelson, (4) State Commissioner of Education, in his Official Capacity Only;

and Zapata County Independent School District, Appellees





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 98-13924, HONORABLE PAUL R. DAVIS, JUDGE PRESIDING








DISSENTING OPINION






 Today, the majority opinion effectively restricts a teacher's right to appeal a school
district's adverse employment action or decision to the Commissioner. In my view, the rule of
statutory construction announced by the majority will bar all breach-of-contract appeals where a
teacher has not suffered an immediate, out-of-pocket, monetary loss. From this point forward, in all
contract disputes short of outright termination, the school district can prevent an appeal to the
Commissioner by simply continuing to pay a teacher's full salary. Because in my opinion this result
is not required by the Education Code, I respectfully dissent. 


The Controversy

 Pete Smith was hired in July 1997 as head football coach and athletic coordinator at
a high school pursuant to a three-year contract with Zapata County Independent School District. In
October 1997, less than two months into the school year and high school football season, he was
demoted without notice or explanation, and was reassigned to teach physical education in an
elementary school, where he was not certified to teach. Smith filed an administrative grievance with
the district, arguing that this action violated his contract and further, that the action was taken
unilaterally by the school district without any of the due process guarantees provided by his contract
and district personnel policies. Smith sought, as his sole remedy, reinstatement to his former
position. Smith specifically did not seek monetary damages against the district. The district
administration denied that its actions violated Smith's contract. Not surprisingly, the district
superintendent and district trustees denied Smith any relief.

 Smith then filed an appeal with the Commissioner of Education pursuant to the appeal
procedure contained in the Texas Education Code. See Tex. Educ. Code Ann. § 7.057 (West 1996). 
Prior to 1995, Smith would have been entitled to appeal any grievance to the Commissioner. Texas
Educ. Agency v. Cypress-Fairbanks Indep. Sch. Dist., 830 S.W.2d 88, 90-91 (Tex. 1992) (stating
that "any person aggrieved by . . . actions or decisions of any board of trustees" is entitled to appeal
to the Commissioner). However, following a legislative committee's extensive interim study, the
Texas Education Code was revised. The right to appeal was restricted, and pertinent to this cause,
a teacher's breach-of-contract appeal was limited to those instances where a violation of the contract
"causes or would cause monetary harm to the employee." Tex. Educ. Code Ann. § 7.057(a)(2)(B). 
Following the district's jurisdictional challenge, the Commissioner dismissed Smith's appeal.

 It is ironic that in a contract dispute where Smith's sole requested remedy is
reinstatement, the Commissioner's decision and the majority opinion expend so much effort
discussing the type of monetary damages Smith is prohibited from recovering. (5) Although the
majority opinion seems to apply traditional rules of statutory construction (i.e., the plain meaning
rule), it ignores a key portion of the Education Code provision in question.


The Plain Meaning of "Would Cause" and "Monetary Harm"

 "If the meaning of the statute is plain, we apply it as written." Sorokolit v. Rhodes,
889 S.W.2d 239, 244 (Tex. 1994) (citation omitted). "The goal of statutory construction is to give
effect to the intent of the legislature." Id. at 241 (citation omitted). If the language of the statute is
unambiguous, then the court must seek the legislative intent as found in the "plain and common
meaning of the words and terms used." Monsanto Co. v. Cornerstones Mun. Util. Dist., 865 S.W.2d
937, 939 (Tex. 1993) (citation omitted).

 Following the 1995 amendments to the Education Code, Smith can only appeal a
contract violation that "causes or would cause monetary harm to the employee." Tex. Educ. Code
Ann. § 7.057(a)(2)(B). While the majority opinion concludes that Smith has failed to show that the
alleged breach has caused present monetary harm, it ignores the tougher question of whether it
"would cause" harm in the future. In his decision, the Commissioner quoted the following definition
of "would": a "word sometimes expressing what might be expected." Black's Law Dictionary 1607
(6th ed. 1990) (emphasis added). Therefore, if a teacher is able to present competent evidence that
the alleged breach of contract might be expected to cause monetary harm, the Commissioner is
required to exercise jurisdiction over the appeal. To require Smith to suffer an immediate salary
reduction as a prerequisite to the appeal of his demotion, as the majority opinion does, ignores an
important part of the statute in question. See Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535,
540 (Tex. 1981) ("It is a rule of statutory construction that every word of a statute must be presumed
to have been used for a purpose.") (citation omitted).

 Additionally, it seems to me that the majority misconstrues the term "monetary
harm." One definition of harm is "a material and tangible detriment or loss to a person, whether or
not the law grants a remedy." Webster's Third New International Dictionary 1034 (Philip B. Gove
ed., 1986) (emphasis added). However, the majority construes monetary harm to require monetary
damages. (6) Certainly the legislature could have used the term "damages" rather than "harm," but it
did not. Rules of statutory construction prohibit us from substituting words within a statute; rather
we must apply the words as originally drafted by the legislature. Sorokolit, 889 S.W.2d at 241 ("In
applying the plain and common meaning of the language in a statute, courts may not by implication
enlarge the meaning of any word in the statute beyond its ordinary meaning; such implication is
inappropriate when legislative intent may be gathered from a reasonable interpretation of the statute
as it is written.") (citations omitted). More importantly, the majority opinion restricts the type of
damages required as a prerequisite to appeal. According to the majority, only contract damages are
permitted; tort damages will not suffice. By what rule of statutory construction does the majority
arrive at this conclusion? We are not told. Certainly, this distinction does not reside within the
statute. Further, the majority opinion defines contract damages as "the value of the expected
contractual bargain." Slip op. at 5. Under this test and absent outright termination, no teacher can
meet this jurisdictional bar as long as the district continues to pay the teacher's full salary. Finally,
the majority argues that tort damages are not recoverable against the district. While this might be
true in some cases, how does that disqualify Smith from bringing this appeal where he seeks only
reinstatement? (7)

 In sum, the majority has taken the qualifying phrase "causes or would cause monetary
harm" and construed it to read "causes present, recoverable monetary contract damages." This
misconstruction of the statute has robbed Smith of a valuable right to appeal. See Doctors Hosp.
Facilities v. Fifth Court of Appeals, 750 S.W.2d 177, 179 (Tex. 1988) ("We have long recognized
that the right of access to an appellate tribunal is a valuable one, constitutionally protected against
arbitrary or unreasonable abrogation.") (citation omitted).


Conclusion

 This case is not about the right to recover monetary damages. This case is not about
whether school districts can transfer their employees from one school to another, or reassign their
teachers from one position to another. This case is about the appellate rights of teachers who allege
that they have been aggrieved by a school district's violation of a written employment contract in
such a manner as to cause them monetary harm, presently or in the foreseeable future. By construing
the statute in a manner that denies teachers in these circumstances the statutory right to a hearing
before the Commissioner, I fear the majority opinion allows school districts to breach employment
contracts whenever they deem it expedient to do so and are financially ready, willing, and able to
continue paying the teacher's full salary for the balance of the contract term.

 Because I believe that the majority opinion places an unwarranted and unjustified
restriction on Smith's right to appeal his contract dispute to the Commissioner, I respectfully dissent. 



 

 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Filed: August 9, 2001

Publish

1. We have substituted the current Commissioner as the appropriate party. See Tex. R. App. P.
7.2(a).
2. See Tex. Educ. Code Ann. § 7.057(d) (West 1996).
3. While not conclusive, the following excerpts from hearings held in 1994 to discuss amendments
to the Education Code reveal an unmistakeable intent to limit appeals to the Commissioner.


 Then-Senator Bill Ratliff, chairman of the committee overseeing the Central
Education Agency, stated:


[T]he current situation is that anytime anyone has . . . a dispute with the school board,
even if that dispute is over board rules, . . . the appeal is to the Commission[er]. Ah, and
that certainly is a hefty load of appeals coming to the Commissioner. . . . The final
appellate body having to do with . . . contract disputes . . . that should come to the
Commissioner. But . . . I'm in hopes that we can stop the appeals from board rules from
coming to the State.


Joint Select Committee to Review the Central Education Agency (Jan. 14, 1994) (page
7 of transcript of tape 3, sides 1 and 2, of the hearing). 


 In a later hearing, Lonnie Hollingsworth, Director of Legislation for the Texas
Classroom Teachers Association, testified before the committee, and the following
discussion took place between Hollingsworth, Lionel Meno, former Commissioner of
Education, and Senator Ratliff:


Ratliff: Frankly I was - I did not have in mind teacher contracts or teacher disputes when
I wrote this. What I was trying to get away from, I understand that there are all kinds of
other things, any dispute having - any disagreement anybody has with a school board
action now, can be appealed to the Commissioner.


Meno: Such, such as - 


Ratliff: No matter whether it's, whether it's state law or rule.


Meno: Such as somebody is coaching at X school and they're moved to coach at Y
school, and they bring an appeal 'cause they don't like the way that they were transferred.


Hollingsworth: And the Commissioner in those circumstances has the discretion over
whether or not he will exercise jurisdiction, and he can refuse to exercise jurisdiction in
those things.


Ratliff: But it still - 


Hollingsworth: He's still got - 


Ratliff: - it still clogs up the system and - 


Hollingsworth: He's gotta, he's gotta hear it enough to decide whether or not he has
jurisdiction, and that's why I, I have no problem with limiting appeals of things where
there's no legal right affected.

Joint Select Committee to Review the Central Education Agency (Aug. 23, 1994) (page 18 of
transcript of tape 4 of the hearing).

4. We have substituted the current Commissioner as the appropriate party. See Tex. R. App. P.
7.2(a).
5. The Commissioner even devotes a portion of his written decision to a discussion of sovereign
immunity as an absolute bar in cases involving tort damage claims. Smith seeks no tort damage
recovery.
6. Damages: "Money claimed by, or ordered to be paid to, a person as compensation for loss or
injury." Black's Law Dictionary 393 (7th ed. 1999).
7. Purely to preserve his jurisdictional right to appeal, Smith filed affidavits by the executive
director of the Texas High School Coaches Association and two other high school football coaches
demonstrating that his demotion would result in future monetary harm. 


ropriate party. See Tex. R. App. P.
7.2(a).
2. See Tex. Educ. Code Ann. § 7.057(d) (West 1996).
3. While not conclusive, the following excerpts from hearings held in 1994 to discuss amendments
to the Education Code reveal an unmistakeable intent to limit appeals to the Commissioner.


 Then-Senator Bill Ratliff, chairman of the committee overseeing the Central
Education Agency, stated:


[T]he current situation is that anytime anyone has . . . a dispute with the school board,
even if that dispute is over board rules, . . . the appeal is to the Commission[er]. Ah, and
that certainly is a hefty load of appeals coming to the Commissioner. . . . The final
appellate body having to do with . . . contract disputes . . . that should come to the
Commissioner. But . . . I'm in hopes that we can stop the appeals from board rules from
coming to the State.


Joint Select Committee to Review the Central Education Agency (Jan. 14, 1994) (page
7 of transcript of tape 3, sides 1 and 2, of the hearing). 


 In a later hearing, Lonnie Hollingsworth, Director of Legislation for the Texas
Classroom Teachers Association, testified before the committee, and the following
discussion took place between Hollingsworth, Lionel Meno, former Commissioner of
Education, and Senator Ratliff:


Ratliff: Frankly I was - I did not have in mind teacher contracts or teacher disputes when
I wrote this. What I was trying to get away from, I understand that there are all kinds of
other things, any dispute having - any disagreement anybody has with a school board
action now, can be appealed to the Commissioner.


Meno: Such, such as - 


Ratliff: No matter whether it's, whether it's state law or rule.


Meno: Such as somebody is coaching at X school and they're moved to coach at Y
school, and they bring an appeal 'cause they don't like the way that they were transferred.


Hollingsworth: And the Commissioner in those circumstances has the discretion over
whether or not he will exercise jurisdiction, and he can refuse to exercise jurisdiction in
those things.


Ratliff: But it still - 


Hollingsworth: He's still got - 


Ratliff: - it still clogs up the system and - 


Hollingsworth: He's gotta, he's gotta hear it enough to decide whether or not he has
jurisdiction, and that's why I, I have no problem with limiting appeals of things where
there's no legal right affected.

Joint Select Committee to Review the Central Education Agency (Aug. 23, 1994) (page 18 of
transcript of tape 4 of the hearing).

4. We have substituted the current Commissioner as the appropriate party. See Tex. R. App. P.
7.2(a).
5. The Commissioner even devotes a portion of his written decision to a discussion of sovereign
immunity as an absolute bar in cases involving tort damage claims. Smith seeks no tort damage
recovery.
6. Damages: "Money claimed by, or ordered to be paid to, a person as compensation for loss or
injury." Black's Law Dictionary 393 (7th ed. 1999).
7. Purely to preserve his jurisdictional right to appeal, Smith filed affidavits by the executive
director of the Texas High School Coaches Association and two other high school football coaches
demonstrating that his demotion would result in future monetary harm. 


ropriate party. See Tex. R. App. P.
7.2(a).
2. See Tex. Educ. Code Ann. § 7.057(d) (West 1996).
3. While not conclusive, the following excerpts from hearings held in 1994 to discuss amendments
to the Education Code reveal an unmistakeable intent to limit appeals to the Commissioner.


 Then-Senator Bill Ratliff, chairman of the committee overseeing the Central
Education Agency, stated:


[T]he current situation is that anytime anyone has . . . a dispute with the school board,
even if that dispute is over board rules, . . . the appeal is to the Commission[er]. Ah, and
that certainly is a hefty load of appeals coming to the Commissioner. . . . The final
appellate body having to do with . . . contract disputes . . . that should come to the
Commissioner. But . . . I'm in hopes that we can stop the appeals from board rules from
coming to the State.


Joint Select Committee to Review the Central Education Agency (Jan. 14, 1994) (page
7 of transcript of tape 3, sides 1 and 2, of the hearing). 


 In a later hearing, Lonnie Hollingsworth, Director of Legislation for the Texas
Classroom Teachers Association, testified before the committee, and the following
discussion took place between Hollingsworth, Lionel Meno, former Commissioner of
Education, and Senator Ratliff:


Ratliff: Frankly I was - I did not have in mind teacher contracts or teacher disputes when
I wrote this. What I was trying to get away from, I understand that there are all kinds of
other things, any dispute having - any disagreement anybody has with a school board
action now, can be appealed to the Commissioner.


Meno: Such, such as - 


Ratliff: No matter whether it's, whether it's state law or rule.


Meno: Such as somebody is coaching at X school and they're moved to coach at Y
school, and they bring an appeal 'cause they don't like the way that they were transferred.


Hollingsworth: And the Commissioner in those circumstances has the discretion over
whether or not he will exercise jurisdiction, and he can refuse to exercise jurisdiction in
those things.


Ratliff: But it still - 


Hollingsworth: He's still got - 


Ratliff: - it still clogs up the system and - 


Hollingsworth: He's gotta, he's gotta hear it enough to decide whether or not he has
jurisdiction, and that's why I, I have no problem with limiting appeals of things where
there's no legal right affected.

Joint Select Committee to Review the Central Education Agency (Aug. 23, 1994) (page 18 of
transcript of tape 4 of the hearing).