# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00641-CV

**North East Independent School District, Appellant**

**v.**

**John Kelley, Commissioner of Education Robert Scott, and Texas Education Agency, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. D-1-GN-06-001375, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal arises out of an employment-contract dispute between appellee John Kelley and his former employer, appellant North East Independent School District (the "District"). After unsuccessfully exhausting the District's grievance process, Kelley sought administrative review before the Texas Commissioner of Education. When the Commissioner determined that he lacked jurisdiction over Kelley's claims and dismissed the appeal, Kelley filed this suit for judicial review in Travis County district court. The trial court reversed the Commissioner's jurisdictional ruling, concluded that the District had breached its contract with Kelley, and remanded the cause to the Commissioner for further proceedings. The District now appeals to this Court, arguing that both the Commissioner and the district court failed to properly apply the substantial-evidence standard of review set forth in section 7.057 of the education code in

reviewing the school board's determination that the District did not breach its contract with Kelley. We will affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The District hired Kelley as a special education teacher at Lee High School in San Antonio for the 2000-2001 school year pursuant to a written "One-Year Probationary Contract." The contract, dated March 7, 2000, contained the following relevant terms and conditions:

1.    Employee shall be employed on a 10-month basis for the school year 2000-01, according to the hours and dates set by the district as they exist or may hereafter be amended.

2.    The Board shall pay Employee in twelve installments an annual salary according to the compensation plan adopted by the Board. In the case of full-time classroom teachers and librarians, compensation shall not be less than the state minimum salary. Employee's salary includes consideration for any assigned duties, responsibilities, and tasks, except as provided in the District's supplemental duty schedule.

3.    Supplemental duties may from time to time be assigned and paid according to District's supplemental duty schedule. This contract does not cover any payments for supplemental duties. Any such payments are not included as part of the annual salary. . . .

4.    Employee shall be subject to assignment and reassignment of positions or duties, additional duties, changes in responsibilities or work, transfers, or reclassification at any time during the contract term.

. . . .

16.   This contract combines and supersedes all prior agreements and representations concerning employment. No amendments to this contract shall be binding unless reduced to writing and signed by both parties.

The District subsequently posted on its website the 2000-2001 School Work Schedule and the North East I.S.D. Teacher Salary Schedule.[1] The School Work Schedule provided for employees holding the position of "Teacher" to work 187 days, from August 7, 2000 to June 1, 2001; the Teacher Salary Schedule likewise indicates that it is "Based on 187 Working Days."[2] Neither document indicates that 187 days is a "minimum" requirement.

Near the end of the school year, Lee's principal, Donna Taylor, informed teachers that they would be required to work on graduation day, June 4, 2001. Kelley asserts that prior to this announcement, which was made at a faculty meeting on May 9, 2001, he had no idea that he was expected to work on graduation day. At the faculty meeting, Kelley expressed his concern to Taylor that he and other teachers were being required to work a day that fell outside of their contract term. Taylor allegedly responded that if Kelley "had a problem showing up for the kids," then she would "take note" of that.

Thereafter, Kelley initiated the District's grievance process, filing his level-one complaint with Taylor and requesting written confirmation that working graduation would be voluntary for teachers, rather than mandatory. After a hearing on May 25, 2001, Taylor denied Kelley's request for a retraction of the requirement that teachers attend graduation. As instructed,

---

[1] Although Kelley produced these exhibits, which he had accessed from the District's website, District representative Ron Martin conceded during the hearing that the schedules were District documents and had been adopted by the school board. The education code requires school districts to post their employment policies on the Internet. *See* Tex. Educ. Code Ann. § 21.204(d) (West 2006) ("If the district has an Internet website, the district shall place the board's employment policies on that website.").

[2] Other types of employees, such as coaches or nurses, were subject to a different total number of working days (up to 199 days) and different starting and ending dates.

Kelley reported to work for the June 4 graduation ceremony and then proceeded with his level-two grievance, seeking compensation for having worked an additional day not covered by his contract.

The level-two stage consisted of a conference between Kelley; his representatives, Steve Jennings and Tom Cummins; and the District's personnel hearing officers, Ron Martin and Ike Haines. During the conference, the parties discussed the "10-month basis" provision of Kelley's contract alongside the two District publications. Kelley and his representatives explained their position that the contract was not for an exact ten months—i.e., from August 7, 2000 to June 7, 2001—but instead that it expressly incorporated the dates and 187-day term listed in the schedules, and thus the June 4 graduation ceremony fell outside of the contract period.[3] Following the level-two conference, Martin issued a written determination that Kelley's grievance should be denied because the June 4 graduation date on which Kelley was required to work was within the ten-month contract period; therefore, Martin concluded that Kelley was not entitled to additional compensation for working an "extra" day.

The final stage of the grievance process, the level-three hearing, was conducted before the District's Board of Trustees. At the hearing, the District produced a memorandum dated August 29, 2000 from the associate superintendent, Dr. Mark Scheffler, to all high school principals stating that "[a]ll faculty members will be expected to work graduation." Scheffler explained that this policy was designed to increase faculty attendance at graduation ceremonies, which had been a major problem the previous year, when attendance was not mandatory. Board member Quintanilla

---

[3] It is undisputed that June 1, 2001 was the 187th school day for the 2000-2001 school year beginning August 7, 2000.

4

asked Martin, on behalf of the District, whether this memorandum amended "the hours and dates set by the District" in accordance with paragraph one of Kelley's employment contract. Martin answered, "Technically, yes, the dates were amended." Quintanilla then asked Martin whether the associate superintendent's memorandum was applied at other high schools throughout the school district. Martin stated that he did not know whether the policy of mandatory attendance at graduation was uniformly applied, and that although Lee High School's graduation on June 4 was "the last" of the graduation ceremonies in the District, he was aware of other District employees who had worked graduation ceremonies after June 1.[4] When asked the same question, Dr. Scheffler stated that he was sure that "there were exceptions across the District just like there was [sic] at Lee High School," and that faculty members who had other commitments or illnesses in the family "worked [those issues] out with the individual principal."

The parties then turned to paragraph four of Kelley's employment contract, which stated that Kelley would be subject to assignment or reassignment of positions or duties, additional duties, changes in responsibilities, and transfers or reclassification at any time during the contract term. Dr. Scheffler stated that this provision was relevant because it reserved the school administration's right to modify the contract as needed at any time during the school year. Kelley responded that he did not believe that this was a reasonable interpretation if it meant imposing mandatory work days outside of the 187-day contract period. Questioning continued as follows:

---

[4] Martin did not specify whether these employees were "teachers" who, like Kelley, were designated to work 187 days (ending June 1, 2001) under the School Work Schedule, or instead held other positions that were subject to different total working days and ending dates.

Mr. Quintanilla:    But you can see that it's not outside of the contract period?

Mr. Kelley:    I think it is outside of the contract period. The contract period was published on the webpage for the District as 187 days ending June 1.

. . . .

Mr. Cummings:    By that interpretation, that the District is applying here we can have a principal require us to work on Christmas day. They have imposed no limitation on themselves by that ten month rule. He says from August 7 to June 7, if that is the District's interpretation, we have to go to the teachers and tell them that they can be required to work on Christmas day because the Board said so.

Mr. Quintanilla:    Is that true, Mr. Martin?

Mr. Martin:    Sir, the minimum requirement for teachers as specified in the Education Code is 187 days minimum. The contract is the legally binding issue before us this evening and I do not honestly believe that anyone in this room thinks that any principal would require any teacher to work Christmas day, Saturday or Sunday.

Mr. Quintanilla:    But, we're only asking as far as your interpretation of this contract what has been reserved to the administration. So from a hypothetical point of view, if in fact under paragraph four the interpretation is it can be reassigned as the District sees fit, if that is in fact the reservation according to the District, why couldn't the District say, "by the way, we want you to work New Year's Day as well."

Mr. Martin:    [S]ir, I suppose that the District could, but I think common sense would prevail and that that will not happen. The minimum number of days is 187, or as may be amended. This contract technically, then, was amended because 187 was the minimum number of days.

Mr. Quintanilla:    So you are saying that, hypothetically, the District could in fact put a memo out saying "our teachers will be required to work on Christmas or New Year's Day?"

6

Mr. Martin:     Sir, we could put a memo out stating most anything, but again that is not going to happen. The minimum number of days for the ten month pay period, the salary paid over the ten month or twelve is the monthly salary; there is no daily rate. I don't think that we are going to require teachers to work Saturdays, Sundays, or holidays. . . . .

As to whether the memorandum that Dr. Scheffler sent to high school principals in August 2000 effectively amended Kelley's contract term in accordance with paragraph four, Kelley stated that the memorandum was sent only to the principal, not the teachers, and that he had no knowledge of the memorandum or its contents before the present dispute arose in May 2001. Nor is there any evidence that the contents of the memorandum were posted on the District's website.

After further discussion, the Board moved to uphold the administration's level-two hearing determination; the motion carried with one member opposed. Kelley then filed a petition for review with the Commissioner asserting that the District had violated a material term of his employment contract relating to the number of days he was required to work in order to earn his annual salary, which caused him monetary harm because he was forced to render services for which he was not paid. He further pleaded that the Board acted arbitrarily, capriciously, and unlawfully in denying his level-three grievance.

The Commissioner determined that (1) Kelley's employment contract provided that the working days were to be set by the District; (2) the four corners of the contract itself did not disclose the number of days to be worked; (3) uncontradicted evidence established that the District had set the requirement for 187 working days for the 2000-2001 school year; and (4) there was no evidence that the Board had set a different number of working days. Based on the foregoing and

7

"[a]pplying the substantial evidence standard," the Commissioner determined that Kelley and the District had contracted for him to work 187 days. Thus, by working graduation, the Commissioner found, Kelley had worked a day not covered by his employment contract. Nevertheless, the Commissioner dismissed Kelley's claim for lack of jurisdiction on the ground that the Commissioner's jurisdiction is limited to cases in which a person is aggrieved by "a written employment contract between the school district and a school district employee." *See* Tex. Educ. Code Ann. § 7.057(a)(2)(B) (West Supp. 2010). Reasoning that Kelley's grievance sounded not in breach of contract (because June 4 was "outside" of Kelley's contractual work year) but in something closer to quantum meruit, the Commissioner determined that the dispute did not satisfy subsection (a)(2)(B) or any other provision in section 7.057 over which he could exercise jurisdiction.

Following the dismissal, both Kelley and the District filed motions for rehearing, which were overruled by operation of law. Kelley then filed suit in Travis County district court. The District answered, filed a counterclaim for declaratory relief against Kelly, and filed a cross-claim for judicial review of the Commissioner's decision. The Commissioner and Kelley sought dismissal of the District's cross-claims and counterclaims, respectively, on the basis that they were an untimely "appeal" of the Commissioner's decision and were therefore barred due to the District's failure to timely file a petition for judicial review in district court. The trial court granted these pleas to the jurisdiction and dismissed all of the District's claims challenging the decision of the Commissioner.

Proceeding to the merits of Kelley's appeal, the district court, after admitting the administrative record into evidence, reversed the Commissioner's jurisdictional determination,

8

concluding that the District had materially breached its employment contract with Kelley and, therefore, Kelley's challenge was proper under section 7.057 of the education code. The district court made the following relevant fact findings in support of its judgment:

2. In March 2000, John M. Kelley entered into a One-year Probationary Contract with the North East Independent School District as a Certified Classroom Teacher.

3. Under the contract, Kelley was employed on a 10-month basis for the school year 2000-01 "according to the hours and dates set by the district as they exist or may hereafter be amended." The District published the 2000-01 School Work Schedule[,] which stated that a high school teacher would work 187 days, from August 7 to June 1.

4. Because the 2000-01 School Work Schedule specifically stated dates of work in terms of the number of days to be worked and by position, the number of days was a material term of the contract.

5. The employment contract stated that Kelley would be paid a salary according to a plan adopted by the Board. The District published the 2000-01 Teacher Salary Schedule **"Based on 187 Working Days."** Under the schedule, a teacher's pay is determined by years of experience and whether the teacher holds an advanced degree.

6. Because Kelley's salary was expressly stated as "Based on 187 Working Days," the relationship between the salary and 187 days was a material term of the contract. *See* Restatement (Second) of Contracts, §§ 202 to 206.

. . . .

9. The District's requirement that teachers work an additional day beyond the published School Work Schedule was a breach of the contract because it effectively increased his work days from 187 to 188 and, correspondingly, reduced Mr. Kelley's salary from $209.52 per day to $208.41 per day.

10. The District's requirement that teachers work an additional day beyond the published School Work Schedule was a breach of the contract because it effectively extended the School Work Schedule for teachers from the published June 1, 2001 date to June 4, 2001, and from 187 days to 188 days.

9

11. The District drafted the contract signed by Mr. Kelley, the 2000-01 School Work Schedule, and the 2000-01 Teacher Salary Schedule. The District is bound by the terms of its contract and the additional terms published. Restatement (Second) of Contracts, § 206.

The trial court remanded the case to the Commissioner for consideration of the damages to be awarded to Kelley. The District now appeals.

## DISCUSSION

On appeal, the District asserts that the district court's judgment must be reversed because both the district court and the Commissioner failed to apply the mandatory substantial-evidence standard of review set forth in section 7.057(c) of the education code.[5] Under the proper standard, the District asserts, the Board's interpretation of the contract should have been entitled to a presumption of validity because it is supported by substantial evidence.

Section 7.057 of the education code governs appeals from a local school district to the Commissioner. Subsection (a) defines the Commissioner's jurisdiction and provides, in pertinent part, that a person aggrieved by actions or decisions of any school district board of trustees that violate a provision of a written employment contract may appeal in writing to the Commissioner, if a violation causes or would cause monetary harm to the employee. Tex. Educ. Code Ann. § 7.057(a)(2)(B). Further, as the District points out, "the commissioner shall issue a decision based on a review of the record developed at the district level under a substantial evidence standard of review." *Id.* § 7.057(c). Under this standard, the Commissioner examines the record to determine

---

[5] The District does not challenge the trial court's dismissal of the District's cross-claim and counterclaim.

whether the school board's decision resulted from a prejudicial error of law, such as an abuse of discretion, an action taken in excess of authority, a violation of law, or fact findings that are unreasonable in light of the evidence found in the record of proceedings before the school board. *Ysleta Indep. Sch. Dist. v. Meno*, 933 S.W.2d 748, 751 n.5 (Tex. App.—Austin 1996, writ denied). The Commissioner is restricted to the record before him and may not re-weigh the evidence, find facts, or substitute his judgment for that of the school board regarding matters properly within the board's discretion. *Id.*

The District argues that the Board's decision to deny Kelley's grievance is supported by substantial evidence. In particular, the District looks to the parties' arguments to the Board, questions asked by the Board members, the written employment contract, the salary and work schedules, and records of Kelley's level one and two hearings.[6] The District relies most heavily on the August 29, 2000 memorandum from Dr. Scheffler, which the District characterizes as an effective unilateral amendment of Kelley's written contract by the District, consistent with the District's right to assign and reassign duties as described in paragraph four of the contract. In light of this record, the District asserts that the Commissioner, in finding that Kelley's contract was for a specific number of days, improperly substituted his judgment for that of the Board.

---

[6] In its discussion of the evidence, the District suggests that, in response to questioning from the Board, Kelley "acknowledged that his contract was for a ten-month term that required him to work through June 7." This statement misconstrues the context from which Kelley's comments were taken. Throughout the level two and three grievance hearings, District representative Martin repeatedly stated that the contract was for a full ten months, from August 7, 2000 through June 7, 2001, while Kelley consistently replied that, in his view, it was not, even though it had been made clear to him since the May 9, 2001 faculty meeting that the school administration's position contradicted his own.

11

Kelley and the Commissioner respond that the District, by failing to timely seek review of the Commissioner's decision, and by failing to appeal the district court's grant of their pleas to the jurisdiction, is barred from complaining of any error in the Commissioner's decision. At the same time, however, the Commissioner maintains that the District could not have filed a suit for judicial review of the Commissioner's decision, because the District was not a party "aggrieved" by a decision of the Commissioner. *See* Tex. Educ. Code Ann. § 7.057(d). Assuming without deciding that the District waived its challenge to the *Commissioner's* decision, neither Kelley nor the Commissioner have shown that the District is prohibited from complaining about error in the *trial court's* judgment rendered in Kelley's suit for judicial review. In other words, once Kelley invoked the trial court's jurisdiction to "determine all issues of law and fact" in his appeal of the Commissioner's decision, *see id.*, and the court rendered its final, appealable judgment pertaining to those issues, nothing prevents the District from seeking review of that judgment before this Court.

Like the Commissioner, the trial court found that the employment contract was for 187 days. But whereas the Commissioner found that requiring Kelley to work an additional day did not violate the contract because the "188th day" was outside of the contract period, the trial court determined that the District's actions did constitute a breach of the contract. Because it determined that the District had breached the contract, the court concluded that the dispute fell within the Commissioner's jurisdiction.[7] Therefore, the trial court reversed the Commissioner's jurisdictional

---

[7] "While the Commissioner's interpretation of his jurisdiction under [section 7.057(a)] is not controlling, it does merit serious consideration if it is reasonable and does not contradict the plain language of the statute." *Smith v. Nelson*, 53 S.W.3d 792, 795 (Tex. App.—Austin 2001, pet. denied) (citing *Dodd v. Meno*, 870 S.W.2d 4, 7 (Tex. 1994); *Spring Indep. Sch. Dist. v. Dillon*, 683 S.W.2d 832, 841 (Tex. App.—Austin 1984, no writ)).

determination and remanded the dispute to the Commissioner to determine the damages owed to Kelley as a result of the breach of his employment contract.

In both proceedings, the Commissioner and the trial court had to interpret the written contract to determine whether, as a threshold matter, the dispute fell within the Commissioner's jurisdiction. *See Smith v. Nelson*, 53 S.W.3d 792, 794 (Tex. App.—Austin 2001, pet. denied) (considering merits to extent necessary to determine whether dispute was within Commissioner's jurisdiction). On appeal, the District does not directly address the jurisdictional issue, arguing only that the trial court failed to apply the proper substantial-evidence review and give due deference to the Board's construction of the contract. Given that they all invite this Court to interpret the contract, the parties apparently agree that whether the trial court correctly found that the Commissioner erred in dismissing Kelley's appeal for lack of jurisdiction depends on whether there was in fact a breach of his employment contract. And while there is no dispute that the substantial-evidence standard of review generally applies to appeals of Commissioner decisions, *see, e.g.*, *Havner v. Meno*, 867 S.W.2d 130, 132-33 (Tex. App.—Austin 1993, no writ), the parties join issue as to how that standard operates in this case, given that the interpretation of an unambiguous contract is purely a question of law. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

According to the District, the trial court erred in determining that the District breached the contract because nothing in the administrative record demonstrates that Kelley's daily rate of pay was effectively decreased—in part because there was no *daily* rate of pay; the contract provides only for an *annual* salary. By contrast, Kelley argues that the contract clearly memorialized

13

the District's promise to pay Kelley his annual salary in return for working 187 days, and thus by requiring him to work 188 days, the District reduced his compensation. In so arguing, Kelley correctly points out that an administrative determination of a legal question, unlike a determination of a disputed fact, is not entitled to a presumption of validity. *See Weslaco Fed'n of Teachers v. Texas Educ. Agency*, 27 S.W.3d 258, 263-64 (Tex. App.—Austin 2000, no pet.) (rejecting District's argument that employment contracts should be reviewed under substantial-evidence standard, rather than de novo). "[A]n agency's interpretation of an unambiguous contract is not binding on a district or appellate court." *Id.* at 264.

Here, no party argues that the contract is ambiguous or that the contracting parties' intent cannot be discerned from the instrument as it is written. We agree that the contract is unambiguous, as it is susceptible to only one reasonable interpretation. *See Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997) (if contract can be given certain or definite legal meaning, it is not ambiguous and should be construed as matter of law). Paragraph one of the contract states that Kelley shall be employed "on a 10-month basis for the school year 2000-01, according to the hours and dates set by the district as they exist or may hereafter be amended." It is undisputed that the District adopted and published the work and salary schedules, which are the only sources of the starting date, ending date, number of working days, and salary terms of the contract, and the record contains no evidence that the hours and dates had been set by the District in any manner or form apart from these schedules.

The District argues that the local administrative record establishes that these schedules were not intended to "modify" the contract in any way and that the Board's implicit

determination that the schedules are not part of the contract should be binding because it is supported by substantial evidence. The schedules, however, do not "modify" the contract; on the contrary, they supply necessary material terms that are otherwise wholly omitted. That they are separate documents incorporated by reference makes them no less effective. In fact, the contract itself acknowledges that these terms are not defined under the four corners of the contract but will necessarily be set by the Board in a separate "compensation plan" and calendar.[8] Nor is the Board's interpretation of the contract—which, as we have discussed above, is a question of law—subject to substantial-evidence review.

Moreover, the District's interpretation that the "10-month basis" language defines the contract term to be a full ten months would mean that the District could require Kelley to work any number of days during that ten-month period—including weekends and holidays—potentially transforming a 187-day school year into a 300-day school year for teachers. Martin confirmed that this is the District's view, suggesting that although the District *could* require that commitment of its teachers, it would be very unlikely to do so because "common sense would prevail." Irrespective of whether common sense would dissuade the District from overreaching, we conclude that an interpretation of the contract that would permit such an abuse is unreasonable and contrary to the contracting parties' intent as it is reflected in the contract.

It is also unreasonable for the District to suggest that Scheffler's memorandum effectively modified the contract term pursuant to paragraph four of the contract, which states that

---

[8] The contract also contemplates a separate "supplemental duty schedule" for determining a teacher's compensation for performing "supplemental duties" not covered by his or her annual salary.

15

Kelley "shall be subject to assignment and reassignment of positions or duties, additional duties, changes in responsibilities or work, transfers, or reclassification at any time during the contract term." Nothing in this provision contemplates that the District may unilaterally amend the contract term, only that if it amends Kelley's position, duties, or responsibilities, it must do so during the contract term and in accordance with its provisions. *See Central Educ. Agency v. George West Indep. Sch. Dist.*, 783 S.W.2d 200, 202 (Tex. 1990) ("The school district's right to modify the contract does not imply the power to substitute something entirely different.").

Because we agree with the trial court that the contract unambiguously provided that Kelley was required to work for a 187-day term, from August 7, 2000 through June 1, 2001, we likewise conclude that the District breached the contract by requiring him to work beyond his fixed term of employment. Accordingly, we hold that the dispute is within the Commissioner's jurisdiction under section 7.057(a) of the education code, and that the matter should be remanded to the Commissioner for further proceedings.

## CONCLUSION

We affirm the judgment of the trial court.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Pemberton
    Dissenting Opinion by Justice Puryear

Affirmed

Filed:   December 9, 2010

17