# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00168-CV

**Appellants, Texas Department of Insurance and Mike Geeslin, in his Capacity as Commissioner of Insurance// Cross-Appellant, State Farm Lloyds**

**v.**

**Appellee, State Farm Lloyds// Cross-Appellees, Texas Department of Insurance and Mike Geeslin, in his Capacity as Commissioner of Insurance**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. D-1-GN-06-002734, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## O P I N I O N

This appeal concerns a rate supervision order issued by the Commissioner of Insurance (the "commissioner"). The order revoked State Farm Lloyds's ability to file and use its insurance rates without prior approval from the Texas Department of Insurance ("TDI").[1] State Farm Lloyds filed a petition for judicial review, declaratory judgment, and injunctive relief in the district court. On cross-motions for summary judgment, the district court granted each of the parties' motions in part and denied each motion in part, holding that the commissioner had authority to issue the order on one or more of the grounds listed except the ground that State Farm Lloyds had

---

[1] Because their interests do not diverge, we refer to appellants//cross-appellees collectively as the "department," but, when necessary in recounting historical facts, we distinguish between the actions of the commissioner and TDI.

exercised its right to judicial review. The court further found that the supervision order was not based on substantial evidence, was arbitrary and capricious, and violated State Farm Lloyds's due process rights. Both parties appeal. We affirm the judgment of the trial court as to the commissioner's authority to issue the rate supervision order. In so doing, we uphold the trial court's finding that the commissioner's order was arbitrary and capricious. As to due process and substantial evidence, we hold that a contested case hearing was not required and, therefore, reverse the trial court's judgment on those points. Accordingly, because we agree that the rate supervision order was arbitrary and capricious, we affirm the trial court's judgment reversing the rate supervision order. Because no contested case hearing was required, we decline to remand the case to TDI for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

In response to problems existing under the flexible rate-setting scheme in effect prior to 2003, including a largely unregulated homeowners insurance market and escalating insurance rates, the Texas Legislature passed Senate Bill 14, which amended the insurance code, establishing a new system for regulating residential property insurance rates. Act of June 2, 2003, 78th Leg., R.S., ch. 206, 2003 Tex. Gen. Laws 907; House Research Organization, Bill Analysis, Tex. S.B. 14, 78th Leg., R.S. (2003); House Comm. Report, Tex. S.B. 14, 78th Leg., R.S. (2003). When legislators proposed SB 14, ninety-five percent of the Texas homeowners insurance market was unregulated, and insurance premiums in Texas were the highest in the country, often for reduced coverage. House Research Organization, Bill Analysis, Tex. S.B. 14, 78th Leg., R.S. (2003); House Comm. Report, Tex. S.B. 14, 78th Leg., R.S. (2003). The new system set out in SB 14 required

insurers to file their rates with TDI, and TDI could review and approve or disapprove these rates. Act of June 2, 2003, 78th Leg., R.S., ch. 206, 2003 Tex. Gen. Laws 907.

The system established by SB 14 was to be implemented in three phases. Article 5.26-1, effective June 11, 2003, through September 1, 2004, set out the procedure by which insurers were to quickly establish their initial rates under the new rate-regulation program. Tex. Ins. Code Ann. art. 5.26-1, § 2 (West Supp. 2004-2005). Under article 5.26-1, insurers were required to file their initial regulated rates with TDI within twenty days of the effective date of SB 14—June 11, 2003—and to implement the rates immediately. *Id.* art. 5.26-1, § 2(a). Within forty days of the filing deadline, TDI was required to review and either approve or modify the initial rates. *Id.* art. 5.26-1, § 2(b). If TDI failed to act within the designated statutory time period, the insurer's filed rates were deemed approved. *Id.* art. 5.26-1, § 2(c).

The second phase of implementation was governed by article 5.142, effective June 11, 2003, through December 1, 2004, which provided temporary rate-regulation procedures that required prior approval of a new rate before the new rate could be used. *Id.* art. 5.142 (West Supp. 2004-2005). Under the terms of article 5.142, insurers could change their initial article 5.26-1 rates by filing their rates with TDI and awaiting the commissioner's approval before implementing these rates. *Id.* art. 5.142, § 5.

The final phase of implementation went into effect after December 1, 2004, and was governed by article 5.13-2. *Id.* art. 5.13-2, § 5 (West Supp. 2004-2005). Under the terms of article 5.13-2, insurers were permitted to file rates and implement the rates immediately without prior approval. *Id.* This permanent file-and-use system allows insurers to use proposed rates immediately,

but TDI can review and either disapprove the rates before they go into effect or disapprove further use of the filed rates after they go into effect. *Id.* art. 5.13-2, §§ 5, 7.

On June 26, 2003, State Farm Lloyds made its required rate filing under article 5.26-1, submitting its then-existing rates as its initial rates. On August 18, 2003, TDI notified State Farm Lloyds of its determination that the rates must be reduced by twelve percent because the rates "are not reasonable for the risks to which they apply." State Farm Lloyds appealed.

Contesting TDI's determination, State Farm Lloyds requested a hearing before the commissioner under the terms of article 5.26-1. *See id.* art. 5.26-1, §§ 3-4. The commissioner heard the merits of the case on September 2 and 3, 2003. To prevail in its appeal under the terms of article 5.26-1, State Farm Lloyds was required to show by clear and convincing evidence that the rate reduction specified by TDI would produce inadequate rates. *Id.* art. 5.142, § 2(b)(2). An inadequate rate was defined as a rate that is "insufficient to sustain projected losses and expenses" and "endangers the solvency of an insurer using the rate." *Id.*; *see also id.* art. 5.26-1, § 1(b) ("The definitions adopted under article 5.142 of this code apply to this article."). Following the hearing, the commissioner issued a final order affirming the department's rate reduction, stating in a single conclusion of law that the rates recommended by TDI would produce adequate base rates for State Farm Lloyds.

State Farm Lloyds appealed the commissioner's determination to district court. The district court granted summary judgment in favor of State Farm Lloyds, declaring the department's actions void and unenforceable, vacating the commissioner's rate order, and denying the department's request to remand the case for further administrative proceedings. According to the

4

district court, article 5.26-1 was unconstitutional on its face and as applied, violating the due course of law provision of the Texas Constitution and the due process clause of the United States Constitution. Article 5.26-1 was also unconstitutional, the court found, because it violated the takings provisions of both the Texas Constitution and the United States Constitution. Further, the court found that the department had denied State Farm Lloyds due process by failing to follow the applicable contested case provisions of the Administrative Procedure Act ("APA") and TDI's own contested case rules. *See* Tex. Gov't Code Ann. §§ 2001.051-.178 (West 2000); 28 Tex. Admin. Code §§ 1.1-1.90 (2003). The commissioner and TDI appealed to this Court. *See Geeslin v. State Farm Lloyds*, No. 03-05-00067-CV, ___ S.W.3d ___ (Tex. App.—Austin 2008, no pet. h.).

Nine days after the trial court declared TDI's rate order void, TDI initiated disciplinary action against State Farm Lloyds, seeking to prevent State Farm Lloyds from charging its current rates, which, according to TDI, were excessive, to require State Farm Lloyds to pay restitution to affected policyholders, and to impose sanctions on State Farm Lloyds. *See* Tex. Ins. Code Ann. arts. 1.02, 5.144 (West Supp. 2004-2005 & Supp. 2007). The parties filed cross-motions for summary judgment in district court, seeking declarations as to TDI's authority to act and impose sanctions under article 1.02 and chapters 82 and 84 of the insurance code.[2] *See id.* art. 1.02, §§ 82.051-.056, 84.021-.022 (West Supp. 2005).

The trial court denied State Farm Lloyds's motion for summary judgment and granted TDI's motion, holding that TDI could seek restitution and sanctions from State Farm Lloyds based

---

[2] While the case was pending in district court, TDI referred the disciplinary action to the State Office of Administrative Hearings ("SOAH") for hearing. The SOAH judge abated the action pending final decision by this Court in the first rate appeal, cause number 03-05-00067-CV.

on State Farm Lloyds's allegedly excessive rates. State Farm Lloyds appealed to this Court. The matter is pending under cause number 03-05-00524-CV.

On December 6, 2004, the commissioner issued a rate supervision order, determining that "State Farm Lloyds' rates require supervision because of the rating practices of State Farm Lloyds." According to the commissioner's order, "State Farm Lloyds has charged excessive rates for homeowners insurance from June 11, 2003, to the present." State Farm Lloyds sought judicial review of this order in district court, arguing that the order was invalid because it was based on excessive rates, not rating practices. On July 7, 2005, the trial court granted State Farm Lloyds's motion for summary judgment in cause number GN500537 without stating the grounds, ordering "that Commissioner's Order No. 04-1164 dated December 6, 2004 is REVERSED." The parties did not appeal this judgment.

On May 30, 2006, pursuant to article 5.13-2, State Farm Lloyds filed new proposed homeowners insurance rates with TDI. In response, on July 21, 2006, the commissioner issued both an order disapproving State Farm Lloyds's rate filing and the supervision order at issue in this case, which indefinitely revoked State Farm Lloyds's right to file and use its rates without prior approval from TDI.[3] The rate supervision order was based on the following "Rating Practices Requiring Supervision":

---

[3] State Farm Lloyds requested a hearing on the commissioner's rate disapproval order pursuant to section 7(b) of article 5.13-2. *See* Tex. Ins. Code Ann. art. 5.13-2, § 7 (West Supp. 2004-2005). A contested case on the rate disapproval order is pending at SOAH. The rate disapproval order is not at issue in this appeal.

6

(1)     From January 13, 2003 to the present State Farm Lloyds has charged rates that were determined by the Commissioner to be excessive and in violation of Texas law, and which should have been reduced by twelve (12%).

(2)     The Commissioner has repeatedly sought to correct the excessive rates charged by State Farm Lloyds, has attempted to prevent State Farm Lloyds from further charging excessive rates, and has attempted to obtain refunds for State Farm Lloyds' policyholders charged such excessive rates in the past through means afforded him under Texas law.

(3)     In response to the Commissioner's efforts, State Farm Lloyds repeatedly failed to reduce excessive rates or pay refunds, continued to file excessive rates, and prevented a final determination of whether its rate was legal.

(4)     Since September 2003, State Farm Lloyds has avoided and thwarted any judicial procedure to determine whether their rates are excessive, unreasonable or unfairly discriminatory. Instead, State Farm Lloyds has challenged the Commissioner's regulatory authority on procedural grounds, forestalling the effective application of such authority, and preventing a final determination of whether State Farm Lloyds' homeowners rates are legal.

(5)     In May 2006 State Farm Lloyds again filed rates that were determined by the Commissioner to be excessive, inadequate, unreasonable, and/or unfairly discriminatory for the risks to which they apply in violation of Texas law. Specifically:

   a)     the provision for non-catastrophe incurred losses and loss adjustment expenses is excessive;

   b)     the provision for hurricane losses and loss adjustment expenses is excessive;

   c)     the provision for fixed expenses is excessive;

   d)     the provisions for underwriting profits, contingencies, and surplus note produce an unreasonably high rate of return;

   e)     the adjustment to remove mold losses did not remove mold losses for years prior to 2001, even though State Farm Lloyds reported such losses in previous TDI data calls;

f) the premium trend factor for inflation was inadequate relative to movement in Texas building costs in recent years, and thus produced an excessive rate indication;

g) the zone system used to classify risk and price insurance results in large rate differences between adjacent geographical areas which are not actuarially justified, and result in unfair discrimination between policyholders of the same class and essentially the same hazard in violation of Texas law;

h) the selection of territorial rate relativities results in rates for certain territories that do not reasonably relate to their actual risk exposure;

i) the indicated territorial relativities are inconsistently applied, resulting in excessive rates for many policyholders;

j) the two percent retained hurricane risk provision is unsupported and excessive;

k) the relative risk attributable to hurricanes is improperly used to determine the needed overall company operating return, even though non-hurricane losses represent the vast majority of expected company exposure, and are less risky, resulting in an overstated rate of return; and

l) the proposed substantial increase in the cost of excess of loss reinsurance purchased by State Farm Lloyds from State Farm Mutual Automobile Insurance Company is unsupported and not reasonable.


State Farm Lloyds filed suit in district court, seeking judicial review of the rate supervision order and a judicial declaration that the commissioner had no authority to issue the supervision order on the grounds stated. The parties filed cross-motions for summary judgment in the district court. On March 21, 2007, the district court granted in part and denied in part the motions of both parties, and reversed and remanded the commissioner's supervision order. The court granted summary judgment for State Farm Lloyds in part, finding that the commissioner had

no authority to issue the supervision order on the grounds that State Farm Lloyds exercised its right to judicial review, that the commissioner violated State Farm Lloyds's due process rights in issuing the order, that the order was not supported by substantial evidence, and that the commissioner's decision to issue the order was arbitrary and capricious. The court granted summary judgment for the department on the grounds that the commissioner had authority to issue the supervision order on all grounds except the ground that State Farm Lloyds exercised its right to judicial review. The court did not reach the question of whether res judicata and collateral estoppel prevented the commissioner from issuing the supervision order.

On May 22, 2008, this Court issued its decision in the first rate appeal. *Geeslin v. State Farm Lloyds*, ___ S.W.3d ___. We concluded that the portion of section 4 of article 5.26-1 setting out the insurer's proof requirement is unconstitutional on its face and as applied to State Farm Lloyds and that State Farm Lloyds was denied any constitutionally meaningful review of TDI's rate order. Accordingly, we affirmed the judgment of the trial court as to the insurer's proof requirement and as to due process. We severed the unconstitutional provision requiring an insurer to prove that a rate reduction by TDI would produce inadequate rates, reversed the trial court's judgment as to the constitutionality of the remainder of the statute, and remanded to the department for further proceedings consistent with the opinion. As we explained, under the remaining, valid provisions of article 5.26-1, an insurer must show by clear and convincing evidence that a rate filed under article 5.26-1 is "just, reasonable, adequate, not excessive, and not unfairly discriminatory for the risks to which it applies," which means that the rate must allow for a "reasonable profit," but not one that is "unreasonably high in relationship to the insurance coverage provided." *See* Tex. Ins.

9

Code Ann. art. 5.26-1, § 2(b), art. 5.142, §§ 2(b)(1-3), 3(d), art. 1.02(c)(1-3).

We now address the validity of the rate supervision order at issue in this third appeal.

## ANALYSIS

### Standard of review

The material facts are not in dispute, and the propriety of summary judgment is a question of law. *Westcott Commc'ns, Inc. v. Strayhorn*, 104 S.W.3d 141, 145 (Tex. App.—Austin 2003, pet. denied). We review the district court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When the material facts are not in dispute, both parties move for summary judgment, and the district court grants one motion and denies the other, we review the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment that the district court should have rendered. *Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

### The department's appeal

The trial court granted summary judgment in favor of State Farm Lloyds on the grounds that the commissioner had no authority to issue the supervision order based on State Farm Lloyds's exercise of its right to judicial review, that the manner in which the commissioner issued the supervision order violated State Farm Lloyds's due process rights, that the supervision order was not supported by substantial evidence, and that the commissioner's decision to issue the order was arbitrary and capricious. The department appeals these determinations.

10

*Jurisdiction*

In its first point of error, the department argues that this Court and the trial court have no jurisdiction to review the rate supervision order. According to the department, because the applicable statute requires no hearing, there is no administrative record for this Court to review, and this Court cannot review the supervision order under the terms of either the insurance code or the government code. State Farm Lloyds responds that this Court and the trial court have jurisdiction over its claim under the Uniform Declaratory Judgments Act ("UDJA") and pursuant to chapter 36, subchapter D, of the insurance code and that State Farm Lloyds has an independent common-law right to judicial review.

Chapter 36 of the insurance code grants broad authority for judicial review of the commissioner's actions. The statute authorizes judicial review of a "decision, order, rate, rule, form, or administrative or other ruling of the commissioner." Tex. Ins. Code Ann. § 36.201 (West Supp. 2007). Section 36.202 further provides: "[a]fter failing to get relief from the commissioner, any insurance company or other party at interest, who is dissatisfied with an action of the commissioner may file a petition for judicial review against the commissioner as defendant." *Id.* § 36.202 (West Supp. 2007). The supervision order is entitled "Official Order of the Commissioner of Insurance" and is signed by the commissioner. Under the plain language of the statute, such an order can be reviewed by the district court.

The department argues that, because chapter 36 provides that "[j]udicial review of the action is under the substantial evidence rule and shall be conducted under Chapter 2001, Government Code," this particular supervision order is not reviewable. According to the

11

department's reasoning, because no hearing was held and no administrative record was created, there is nothing for the district court to review. We disagree. Although the statute sets out a substantial evidence standard of review, nothing in the language of the statute requires that there have been an administrative hearing and corresponding administrative record as a prerequisite for judicial review. Such an interpretation would lead to the conclusion that TDI could simply refuse to hold administrative hearings and then issue an order that would be immune from judicial review, a result that could hardly be contemplated by the statutory review process. *See Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999) (explaining that a court should not adopt a statutory construction that would render the statute meaningless or lead to absurd results).

Further, the APA provides that when a court reviews an agency decision under the substantial evidence rule,

> [the] court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion but:
>
> (1)    may affirm the agency decision in whole or in part; and
>
> (2)    shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> > (A)    in violation of a constitutional or statutory provision;
> >
> > (B)    in excess of the agency's statutory authority;
> >
> > (C)    made through unlawful procedure;
> >
> > (D)    affected by other error of law;
> >
> > (E)    not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F)     arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Tex. Gov't Code Ann. § 2001.174. Thus, the substantial evidence standard of review requires only that the court "not substitute its judgment for the judgment of the state agency on the weight of the evidence" but allows the court to address other aspects of the decision, including whether the decision violated a constitutional or statutory provision, whether the agency acted outside its authority in issuing the decision, and whether the agency violated procedural requirements in issuing the decision. *Id.* Several of State Farm Lloyds's claims—that the actions for which the commissioner placed it under supervision are not "rating practices," that the supervision order is arbitrary and capricious, that the commissioner acted outside his authority in issuing the supervision order, and that its due process rights were violated—do not require review of an administrative record, and all are authorized grounds for reversal or remand of a decision under the APA. *See id.* § 2001.174(2).

The department further argues that, to be reviewable, an agency order must be final. Here, the department contends, there is no final order to review. Although the department cites cases to support its position and explains the rationale behind requiring a final order before review, it never adequately explains why the supervision order does not qualify as a final agency action. According to the department, "[t]he order State Farm Lloyds challenges sets a regulatory process in motion; that process gives State Farm Lloyds the opportunity to be heard and ultimately seek judicial review of orders that result from that process." We find the department's analysis unpersuasive. An agency order does not become interlocutory simply because it affects the administrative process. The

department is correct that the supervision order allows State Farm Lloyds to file rates for the commissioner's review and to request an administrative hearing if the commissioner disapproves those rates; however, nothing in that established process allows State Farm Lloyds to challenge the supervision order itself. The only means of challenging the commissioner's supervision order is to seek judicial review of the order. We find nothing in the order to suggest that it is not a final, completed agency action. We conclude that this Court and the district court have jurisdiction to address State Farm Lloyds's claim under chapter 36 of the insurance code. *See* Tex. Ins. Code Ann. §§ 36.201-.202.

Having concluded that the district court and this Court have jurisdiction to address State Farm Lloyds's claims pursuant to chapter 36 of the insurance code, we overrule the department's first point of error.[4]

### *Hearing*

In its second point of error, the department argues that the commissioner was not required to hold a hearing and develop a record before issuing the rate supervision order. According to the department, because no hearing was required, the supervision order cannot be found to be arbitrary and capricious because of a lack of substantial evidence. As support for this argument, the department argues that nothing in section 5A of article 5.13-2 expressly requires a hearing and that State Farm Lloyds has no property right in the statutory file-and-use system and, therefore, no constitutional right to a hearing. State Farm Lloyds counters that its statutory right to file and use

---

[4] Having determined that jurisdiction exists under chapter 36, subchapter D, of the insurance code, we need not address State Farm Lloyds's additional arguments that jurisdiction also exists under the Uniform Declaratory Judgments Act ("UDJA") and that it has an independent common-law right to judicial review.

its rates without prior approval is a constitutionally protected property interest; therefore, its due process rights were violated when the commissioner issued the supervision order without first holding a hearing.

This Court has long held that, absent express statutory authority, the APA does not independently provide a right to a contested case hearing. *Texas Logos, L.P. v. Texas Dep't of Transp.*, 241 S.W.3d 105, 123 (Tex. App.—Austin 2007, no pet.); *Eldercare Props., Inc. v. Texas Dep't of Human Servs.*, 63 S.W.3d 551, 557 (Tex. App.—Austin 2001, pet. denied), overruled on other grounds by *Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 173 (Tex. 2004); *Best & Co. v. State Bd. of Plumbing Exam'rs*, 927 S.W.2d 306, 309-10 (Tex. App.—Austin 1996, writ denied).[5] State Farm Lloyds does not contend that any provision in the statute requires a hearing before an order is issued pursuant to article 5.13-2, section 5A, and we find none. In the absence of express statutory authority, State Farm Lloyds had no right to a contested case hearing.

State Farm Lloyds argues that, even in the absence of express statutory authority, it was entitled to a contested case hearing because its statutory right to file and use its rates is a constitutionally protected property interest that cannot be taken away without due process. There is no vested right in the continuation of a current law. *Subaru of Am. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 219 (Tex. 2002); *Board of Med. Exam'rs for Tex. v. Nzedu*, 228 S.W.3d 264, 273 (Tex. App.—Austin 2007, pet. denied). In *Subaru*, the court explained:

---

[5] Neither party has asserted a basis for our distinguishing or departing from these decisions.

15

that no one has a vested right in the continuance of present laws in relation to a particular subject, is a fundamental proposition; it is not open to challenge. The laws may be changed by the Legislature so long as they do not destroy or prevent an adequate enforcement of vested rights. There cannot be a vested right, or a property right, in a mere rule of law.

*Subaru*, 84 S.W.3d at 219 (quoting *Middleton v. Texas Power & Light Co.*, 185 S.W. 556, 560 (Tex. 1916)).  The distinction between a vested right and a "mere rule of law" turns on whether the statute granting the right in question is substantive or procedural in nature.  *See id.*

Here, the protected right claimed by State Farm Lloyds is the right to a certain procedure in setting its rates.  In other words, the vested right claimed by State Farm Lloyds is not the right to set a certain rate but the right to a certain procedure in setting that rate.  State Farm Lloyds is, thus, claiming a property interest in a procedural rather than a substantive right.  While State Farm Lloyds may have a vested right in a reasonable rate, we find no vested right in the method of establishing or reviewing those rates.

Further, the language of the statute points to the legislature's intent that no contested case hearing be required before the commissioner issues a rate supervision order.  The primary rule in statutory interpretation is that a court must give effect to legislative intent.  *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 383 (Tex. 2000).  In determining legislative intent, we read the statute as a whole and interpret it in a manner that gives effect to all and not just isolated portions.  *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003).  The statute at issue here provides:

(a)     The commissioner by order may require an insurer to file with the commissioner all rates, supplementary rate information, and any supporting information as prescribed by this section if the commissioner determines that:

(1)     an insurer's rates require supervision because of the insurer's financial condition;

(2)     an insurer's rates require supervision because of the insurer's rating practices; or

(3)     a statewide insurance emergency exists.

Tex. Ins. Code Ann. art. 5.13-2, § 5A.  The legislature is unlikely to have intended that a contested case hearing be held to determine whether a statewide emergency exists.  Requiring such a hearing would require the participation of all regulated insurers in Texas and would defeat the statute's purpose of providing the commissioner with quick and efficient means for addressing a statewide insurance emergency.  The same could be true for an insurer's financial condition.  An insurer's financial condition may become such that the commissioner is compelled to quickly issue a rate supervision order to protect Texas policyholders.  In setting up such a process, the legislature likely contemplated giving the commissioner a tool by which he could quickly and expeditiously address acute issues that may arise with insurers or with the insurance market as a whole.[6]  Requiring a contested case hearing, which is often a slow and lengthy proceeding, is inconsistent with this intent.

In sum, we conclude that no statutory provision requires the commissioner to hold a contested case hearing before issuing a rate supervision order, that State Farm Lloyds has no constitutionally protected right in any given rate setting procedure, and that the legislature did not intend to require a contested case hearing under section 5A.  We therefore hold that a contested case hearing was not required, and we reject State Farm Lloyds's contentions that the supervision order is void on those grounds.

---

[6] In the context of this case, we are compelled to note that this broad authority is granted only to address rating practices, and we express no opinion here as to whether all grounds included in the commissioner's rate supervision order are included within the scope of a rating practice.

Also subsumed in the department's second point of error is its challenge to the trial court's conclusions that the supervision order was not supported by substantial evidence and that the order was arbitrary and capricious. As to substantial evidence, because we agree with the department that no hearing is or was required, no administrative record is or was developed. Absent an administrative record, no substantial evidence review is required or even possible. However, as State Farm Lloyds recognizes, even without an administrative record, judicial review may still be possible on other grounds: "Even if State Farm Lloyds were not entitled to a hearing, the District Court's reversal of the Supervision Order is still correct. The Order is also arbitrary and capricious because it is based on legally irrelevant factors, and is in excess of the Commissioner's statutory authority." State Farm Lloyds is apparently arguing that, if no hearing was required, reversal of the order could still be had, but reversal would have to be based on grounds other than a lack of substantial evidence.

As the department's final component in its second point of error, we next address whether the supervision order was arbitrary and capricious. Implied in the department's single sentence on this issue is its argument that because State Farm Lloyds was not entitled to a hearing, and because there was no requirement that the supervision order be supported by substantial evidence, the supervision order cannot be arbitrary or capricious. According to the department: "Because no hearing is required, the absence of a hearing record does not make the order invalid or arbitrary and capricious as not supported by substantial evidence." The department, however, provides no additional argument on this point.

An agency's order is arbitrary and capricious if the order is not supported by substantial evidence. *Texas Health Facilities Comm'n v. Charter Medical-Dallas, Inc.*, 665 S.W.2d 446, 454 (Tex. 1984). Even if supported by substantial evidence, however, an agency order may be

18

arbitrary and capricious if a denial of due process has prejudiced the litigant's rights or if the agency has improperly based its decision on non-statutory criteria. *Id.*; *Kawasaki Motors Corp. U.S.A. v. Texas Motor Vehicle Comm'n*, 855 S.W.2d 792, 794-95 (Tex. App.—Austin 1993, no writ). Similarly, an agency decision may be found to be arbitrary and capricious if it is based on legally irrelevant factors or if legally relevant factors were not considered or if the agency reached an unreasonable result. *City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 184 (Tex. 1994); *Dunn v. Public Util. Comm'n*, 246 S.W.3d 788, 791 (Tex. App.—Austin 2008, no pet.) ("We will consider an administrative agency's decision to be arbitrary and capricious or an abuse of discretion if the agency reaches a completely unreasonable result after weighing the relevant factors established by the legislature.").

Here, we have already determined that, because State Farm Lloyds was not entitled to a hearing, there has been no due process violation, and there was no requirement that the order be supported by substantial evidence. We must now determine whether the commissioner's decision was arbitrary and capricious because the commissioner based the order on legally irrelevant factors, failed to consider legally relevant factors, or reached an unreasonable result. In granting summary judgment for State Farm Lloyds, the trial court determined that the commissioner had no authority to issue the supervision order on the grounds that State Farm Lloyds exercised its right to judicial review. The department did not appeal this determination. Thus, even if some of the factors on which the order was based were relevant, at least one of the factors was irrelevant. In other words, even if the commissioner also considered other legally relevant factors, the order was based in part on at least one legally irrelevant factor. The commissioner's supervision order did not consider each

19

factor as an independent ground for rate supervision; rather, the order was based on all of the "rating practices identified." Because the commissioner considered at least one legally irrelevant factor in issuing his order, we agree that the order is arbitrary and capricious.

Having found that no hearing was required and, therefore, that no substantial evidence review was required, we reverse the judgment of the trial court as to those points. However, having determined that the commissioner's order was arbitrary and capricious, we affirm the trial court's judgment as to that point. Because we have upheld one of the trial court's grounds for reversal of the supervision order, we accordingly uphold the trial court's reversal of that order; however, because we have found that no contested case hearing was required, we decline to remand the case to TDI for further proceedings.

**State Farm Lloyds's appeal**

The trial court granted summary judgment in favor of the department on the grounds that the commissioner had authority to issue the supervision order on one or more of the grounds stated in the order, except the ground that State Farm Lloyds exercised its right to judicial review. State Farm Lloyds appeals these determinations.

### *Rating practices*

In its first point of error, State Farm Lloyds argues that the commissioner lacks authority to issue the supervision order on the grounds that State Farm Lloyds charged or filed excessive rates. According to State Farm Lloyds, the grounds on which the commissioner based his order are not rating practices under article 5.13-2, section 5A; therefore, the commissioner had no

authority to issue the order on those grounds. The department responds that State Farm Lloyds's interpretation of rating practices is too narrow and that "'rating practices' includes an insurer's activities relating to all matters involved in the filing and use of rates."

The insurance code defines rates as "the cost of insurance per exposure unit . . . before any application of individual risk variations based on loss or expense considerations." Tex. Ins. Code Ann. art. 5.13-2, § 3(a)(5). The insurance code does not define rating practices, and the term appears only in section 5A of article 5.13-2. According to the department, because article 5.13-2's express purpose is to "promote the public welfare by regulating rates to prohibit excessive, inadequate, or unfairly discriminatory rates," in the context of article 5.13-2, an insurer's rating practices must include "all matters involved in the filing and use of rates," including:

1) whether or not the rating system has an unfair impact on certain segments of the insured population or otherwise violates public policy objectives;

2) the marketing objectives embodied in existing or proposed rating structures;

3) whether or not the rating structures or prices are based on sound actuarial principles; and

4) whether or not the rates represent a continuation of past approaches that have been repeatedly rejected or otherwise been shown to be in error.

State Farm Lloyds counters that, by context, rating practices refer only to how an insurer applies its various filed rates to different insured individuals and businesses. State Farm Lloyds points out that the word "rating" appears in two other definitions included in article 5.13-2. A "rating manual" is defined as "a publication or schedule that lists rules, classifications, territory codes and descriptions, rates, premiums, and other similar information used by an insurer to determine the applicable premium charged an insured." Tex. Ins. Code Ann. art. 5.13-2, § 3(a)(6). Similarly, "supplementary

21

rating information" is defined as information "used by the insurer to determine the applicable premium for an insured." *Id.* art. 5.13-2, § 3(a)(8). Thus, according to State Farm Lloyds, because other definitions that include the term "rating" apply to "determine the applicable premium" for an insured, a rating practice, similarly, is intended to refer only to how an insurer applies its filed rates to individual insureds.

Even if we accept State Farm Lloyds's interpretation of the meaning of rating practices, however, we find that one or more of the grounds included in the commissioner's supervision order involves the application of State Farm Lloyds's filed rates to individual insureds. Specifically, the order finds that State Farm Lloyds's May 6, 2006 filed rates were "excessive, inadequate, unreasonable, and/or unfairly discriminatory for the risks to which they apply" because, among other reasons:

g)      the zone system used to classify risk and price insurance results in large rate differences between adjacent geographical areas which are not actuarially justified, and result in unfair discrimination between policyholders of the same class and essentially the same hazard in violation of Texas law;

h)      the selection of territorial rate relativities results in rates for certain territories that do not reasonably relate to their actual risk exposure;

i)      the indicated territorial relativities are inconsistently applied, resulting in excessive rates for many policyholders;

These grounds (grounds g, h, and i) do not implicate State Farm Lloyds's rate, which is defined as "the cost of insurance per exposure unit . . . before any application of individual risk variations based on loss or expense considerations"; rather, these grounds implicate State Farm Lloyds's application of its rates to individual policyholders. Thus, even assuming that the commissioner has no authority

22

to address rates through an article 5.13-2, section 5A, supervision order, and that excessive rates must be addressed under the specific rate disapproval provisions set out in section 7 of article 5.13-2, as State Farm Lloyds contends, the commissioner has the authority to issue a supervision order on the basis of the above-mentioned practices because those practices involve not the rates themselves but the application of rates to individual policyholders.  We, therefore, agree with the trial court that "the Commissioner has authority to issue Official Order No. 06-0746 on one or more of the grounds stated in Official Order 06-0746, except on the ground that State Farm Lloyds exercised its right to judicial review."[7]  We overrule State Farm Lloyds's first point of error.

### Res judicata and collateral estoppel

In its second point of error, State Farm Lloyds argues that res judicata prohibits the commissioner from issuing the supervision order on the ground that State Farm Lloyds's existing rates are excessive.  According to State Farm Lloyds, by reversing the commissioner's December 6, 2004 rate supervision order in cause number GN500537, the trial court found that State Farm Lloyds's rates cannot be placed under supervision on this ground and, because the department did not appeal the judgment, the department is bound by it.

The general doctrine of res judicata encompasses two distinct categories: (1) res judicata, or claim preclusion, and (2) collateral estoppel, or issue preclusion.  *Barr v. Resolution Trust Co.*, 837 S.W.2d 627, 628 (Tex. 1992).  Res judicata, or claim preclusion, precludes relitigation of claims that have been finally adjudicated or that arise out of the same subject

---

[7] We do not address whether the commissioner had authority to issue the rate supervision order on the ground that State Farm Lloyds exercised its right to judicial review, as the department does not appeal this issue.

23

matter and that could have been litigated in the prior action. *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). It requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Id.* Collateral estoppel, or issue preclusion, is more narrow than res judicata because it only prevents relitigation of identical issues of fact or law that were actually litigated and essential to the judgment in a prior suit. *Barr*, 837 S.W.2d at 628. Once an actually litigated and essential issue is determined, that issue is conclusive in a subsequent action between the same parties. *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985).

In the 2004 supervision order that was the subject of the trial court's 2005 summary judgment order in cause number GN500537, the commissioner set out only the following rating practice: "Based on the information currently available to TDI, State Farm has charged excessive rates for homeowners insurance from June 11, 2003, to the present." State Farm Lloyds sought review of the commissioner's 2004 order in district court and filed a motion for summary judgment, arguing that the order was invalid because it was based on excessive rates, not rating practices. The trial court granted summary judgment in part, voiding the commissioner's 2004 rate supervision order.[8] Thus, the trial court's order determined only that the 2004 supervision order was void. The judgment did not determine the validity of any other future rate supervision order, as future rate

---

[8] The trial court denied the remainder of the summary judgment as moot. Because the trial court had invalidated the rate supervision order, it no longer needed to determine whether rates filed by State Farm Lloyds pursuant to the order were deemed approved by operation of law under article 5.13-2, section 5A(d).

24

supervision orders could be based on completely different and valid criteria.

Here, as in his 2004 rate supervision order, the commissioner concluded that "[f]rom January 13, 2003 to the present State Farm Lloyds has charged rates that were determined by the Commissioner to be excessive and in violation of Texas law, and which should have been reduced by twelve percent (12%)." Unlike the 2004 supervision order, however, we conclude that the commissioner's 2006 supervision order was based in part on State Farm Lloyds's rating practices. Nothing in the trial court's 2005 judgment prohibits issuing a supervision order based on rating practices. The trial court's judgment simply determines that the commissioner's 2004 order is invalid. Here, the 2006 supervision order includes one or more grounds that are based on rating practices, not excessive rates. We conclude that, to the extent that the commissioner's 2006 supervision order included rating practices, the order was not prohibited by res judicata or collateral estoppel.[9] Accordingly, we overrule State Farm Lloyds's second point of error.

**CONCLUSION**

Having concluded that the commissioner's order included one or more grounds that qualify as rating practices under article 5.13-2, section 5A, and that, to that extent, the commissioner's order was not prohibited by res judicata or collateral estoppel, we overrule State

---

[9] Similarly, to the extent that the commissioner issued the order based on excessive rates rather than rating practices, the order might be prohibited by res judicata. As noted, we have found that three specific grounds amount to rating practices and, therefore, affirm the trial court's conclusion that "the Commissioner has authority to issue Official Order No. 06-0746 on one or more of the grounds stated in Official Order 06-0746, except on the ground that State Farm Lloyds exercised its right to judicial review"; however, we neither address nor decide whether other specific grounds in the supervision order are based on rating practices or excessive rates.

25

Farm Lloyds's points of error. We further conclude that State Farm Lloyds was entitled to judicial review and accordingly overrule the department's jurisdictional complaint. Finding that State Farm Lloyds was not entitled to a contested case hearing and that no substantial evidence review was required, we sustain the department's complaint as to these points, but, holding that the commissioner's order was arbitrary and capricious, we overrule the department's complaint as to this point. Accordingly, we affirm the trial court's order reversing the commissioner's supervision order; however, because no contested case hearing was or is required, we decline to remand the case to TDI for further proceedings.

_____

Diane M. Henson, Justice

Before Chief Justice Law, Justices Waldrop and Henson

Affirmed in part; Reversed and Rendered in part

Filed: July 24, 2008