TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00475-CV






Bosque River Coalition, Appellant


v.


Texas Commission on Environmental Quality, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT

NO. D-1-GN-09-003219, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING



 


O P I N I O N



 Bosque River Coalition ("the Coalition") appeals a district-court judgment affirming
an order of the Texas Commission on Environmental Quality ("the Commission") denying the
Coalition's request for a contested-case hearing regarding the proposed issuance of a water-quality
permit. We will reverse the district court's judgment.


FACTUAL AND PROCEDURAL BACKGROUND

 This proceeding arises from dairy owner and operator Gerben Leyendekker's
application to amend an existing "concentrated animal feeding operation" (CAFO) (1) permit to
increase the maximum number of cows permitted to be confined at his dairy from 700 to 999 head
and to allow the dairy to apply liquid and solid wastes to "waste application fields" located closer
to Gilmore Creek, a creek located in the North Bosque River watershed and, according to the
Coalition, closer to creekside property owned by its members. (2) The Commission staff classified the
permit application as seeking a "major" amendment to the dairy's existing water-quality permit. See
30 Tex. Admin. Code § 305.62(c)(1) (2011) (Tex. Comm'n on Envtl. Quality, Amendments) ("A
major amendment is an amendment that changes a substantive term, provision, requirement, or a
limiting parameter of a permit."). (3) The Commission's rules provide an opportunity for interested
persons to request reconsideration of the executive director's preliminary decision regarding such
a permit and to request a contested-case hearing under the Administrative Procedure Act (APA),
Tex. Gov't Code Ann. §§ 2001.001-.902 (West 2008). See Tex. Water Code Ann. § 5.556 (West
Supp. 2010); 30 Tex. Admin. Code § 55.201 (2011) (Tex. Comm'n on Envtl. Quality, Requests for
Consideration or Contested Case Hearing).

 The Commission's executive director declared the permit application administratively
complete, conducted technical review, prepared a draft permit, and issued a preliminary decision that
the draft permit, if issued, met all statutory and regulatory requirements. As Leyendekker had
requested, the draft permit proposed to increase the dairy's maximum herd size from 700 to 999
head. At the same time, however, the draft permit proposed to implement several new measures that
Commission staff viewed as strengthening the overall water-quality protections at the facility, even
considering the higher volumes of manure that would be produced by hundreds more cows. These
included steps aimed at reducing the possibility of discharges from the dairy's retention control
structures by more than doubling their total storage capacity--estimated to accommodate rainfall and
runoff from a 12.0-inch rain event--and expanding the size of non-vegetative buffer zones around
the waste application fields.

 During the public comment period, the City of Waco submitted numerous comments
in opposition to the proposed permit. (4) The executive director responded to the comments and
ultimately determined that the application and draft permit met the requirements of the applicable
law. The Coalition then timely filed a written request for a contested-case hearing. The request
stated that certain individuals and entities that are members of the Coalition "are affected persons
with personal justiciable interests not common to the general public in that they own property along
Gilmore Creek downstream from the Dairy and into which discharges and runoff from the Dairy
drain." (5) Specifically:

 Mr. Claude Kilpatrick owns over 100 acres along Gilmore Creek, approximately
2 miles from the Dairy. He uses the property as a ranch and maintains cattle and
horses. Mr. Kilpatrick and his family use Gilmore Creek for fishing and recreation.


 Mr. Torrey Moncrief owns over 400 acres also along Gilmore Creek, approximately
1.5 miles from the Dairy.


 The Ranch at Hico, LLC ("The Ranch") owns over 1,500 acres along Gilmore Creek,
approximately 1.7 miles from the Dairy. This property also includes Gilmore Creek
Reservoir, a PL-566 reservoir . . . that has already been negatively impacted by
discharges from the Dairy. The Ranch uses the property as a cattle ranch and retreat
for religious organizations, including the use of Gilmore Creek and Gilmore Creek
Reservoir for boating, fishing, swimming, tubing, and stock watering.



The request stated that "[t]he proposed discharge authorized by the Draft Permit, and resulting
effects on water quality in Gilmore Creek, threaten the use and enjoyment of their property and their
use of Gilmore Creek." Attached to the request was a map showing the locations of the dairy, the 
three Coalition members' property, and the direction of flow of Gilmore Creek. The request listed 
32 disputed issues of fact that the Coalition contended were derived from comments made by the
City of Waco during the public comment period. (6) 

 The executive director timely filed a response in opposition to the Coalition's
contested-case hearing request. See 30 Tex. Admin. Code § 55.209(d), (e) (2011) (Tex. Comm'n
on Envtl. Quality, Processing Requests for Reconsideration and Contested Case Hearing). The
executive director did not dispute that the Coalition, if an affected person, would have a legal right
to a contested-case hearing and concluded that the Coalition's request met the Commission's
procedural requirements governing hearing requests, including providing the requisite "brief, but
specific, written statement" explaining the Coalition's personal justiciable interest affected by the
application. See id. § 55.201(d)(2) (2011) (Tex. Comm'n on Envtl. Quality, Requests for
Reconsideration or Contested Case Hearing). (7) The executive director further agreed that there were
four fact issues raised by the Coalition that would be referable to SOAH. See id.§§ 55.201(d)(4),
.211(c)(2)(A) (2011) (Tex. Comm'n on Envtl. Quality, Commission Action on Requests for
Reconsideration and Contested Case Hearing). However, after considering whether the Coalition
met the section 55.205(a)(1) association requirements, the executive director concluded that it did
not because he found that none of the three members identified in the hearing request had standing
as an "affected person." With respect to each of the members, the executive director stated that none
had a personal justiciable interest distinguishable from the general public that would be affected by
the application because "the permit does not authorize discharges into water in the state under
normal operating conditions." The executive director also relied on the following propositions to
support his conclusion that none of the members had standing as an "an affected person":


  The dairy will not be authorized to discharge except in the event of a 25-year,
10-day storm event. The new pond sizing requirements included in the permit 
result in retention control structures that are designed to contain a 12.0 inch
rainfall, an event that "should be very infrequent and in such an event, a
discharge from the RCSs [Retention Control Structures] may still not occur."


  Runoff from the dairy's waste application fields and third-party fields is
considered exempt agricultural runoff that is not regulated, assuming that
waste is applied in compliance with the permit and applicable rules.


  Kilpatrick's property is located approximately 2.7 miles downstream from the
facility and approximately 3 miles from the RCSs. The executive director
reasoned that because of this distance, activities conducted at the facility "are
not expected to affect the health and safety of Mr. Kilpatrick."


  Moncrief's property is located approximately 2.06 miles downstream from
the facility, and "due to the distance . . . it is unlikely that the dairy would
impact the health and safety of Mr. Moncrief," and "any claimed health
impacts by Moncrief would be similar to that of the general public."


  The Ranch's property is located approximately 2.27 miles from the facility,
and "due to the distance the chance of an impact of the dairy on the health
and safety of persons residing at or using the Ranch are similar to that of
other members of the general public." The executive director further stated
that "[t]he same factors also dictate that the impact of the facility on the use
of the Ranch's property by its residents is similar to other members of the
general public."




 Consequently, the executive director concluded that the Coalition did not meet one of the necessary
criteria for a group or association to request a hearing because it failed to demonstrate that one or
more of its members was an "affected person" with standing to request a hearing in his own right. 
See id. § 55.205(a)(1).

 The Coalition filed a reply in support of its hearing request. See id. § 55.209(g). The
Coalition asserted that the executive director's contention that the three members are not affected
persons was "baseless because it relies solely on the presumption that a permit only allowing a
discharge during certain rainfall events will, as a matter of law, not impact the downstream
landowners." The Coalition contended that such a presumption "fails because this issue is a central
question of fact raised by the Coalition's hearing request," and that the Commission's denial of the
hearing request was based on "its decision on the properties' distance from the [dairy] alone and
providing no facts, or even analysis, that at the referenced distances the properties of Mr. Kilpatrick,
Mr. Moncrief, and the Ranch and use of said properties would not be impacted." The Coalition
further argued that it had established that Kilpartrick, Moncrief, and the Ranch are affected persons
with standing to request a contested-case hearing because of their downstream proximity to the dairy. 
Because of this location, the Coalition argued, any potential discharge from the dairy would
negatively affect water quality in Gilmore Creek, thereby threatening their use and enjoyment of their
property and the creek for fishing, recreation, religious activities, and stock watering in a manner not
common to members of the public.

 The Commission subsequently considered the Coalition's hearing request and
Leyendekker's permit application in a public meeting. See 30 Tex. Admin. Code § 55.209(g). No
further evidence related to the hearing request was presented. The Commission denied the
Coalition's request for hearing without referring it to SOAH. See id. § 55.211(b). In its order, the
Commission stated that it had evaluated the request "under the requirements in the applicable
statutes and Commission rules, including 30 Texas Administrative Code Chapter 55," and
considered "all other timely filings in this matter, including the responses to the Coalition's hearing
request filed by the Executive Director and the Office of Public Interest Counsel and the Coalition's
reply." In the same order, the Commission revised and then adopted as revised the executive
director's response to public comment, approved the permit amendment, and issued the permit as
recommended by the executive director.

 The Coalition filed a motion for rehearing, which was overruled by operation of law.
The Coalition then sought judicial review of the Commission's order in Travis County district court. 
See Tex. Water Code Ann. §§ 5.351, .354 (West Supp. 2010). The district court affirmed the
Commission's order, and this appeal followed. See id. § 5.355 (West Supp. 2010).


DISCUSSION

 In a single issue, the Coalition contends that the Commission erred in denying its
hearing request and that the district court similarly erred in affirming the Commission's order. 
Although the Commission's order does not state the specific grounds for the denial and the
Commission did not enter findings of fact or conclusions of law, the parties agree that the denial was
based on the Commission's conclusion that the Coalition is not an "affected person" with respect
to the Leyendekker permit application under the applicable water code provisions and Commission
rules governing the right to a contested-case hearing. (8) The Coalition asserts that this conclusion was
erroneous and that, at a minimum, it was entitled to a contested-case hearing on the issue of whether
it is an "affected person" under those statutes and rules.

 In a suit for judicial review of an agency order pursuant to the APA, a reviewing
court must:

 

 reverse or remand the case for further proceedings if substantial rights of the
appellant have been prejudiced because the administrative findings, inferences,
conclusions, or decisions are:


 (A) in violation of a constitutional or statutory provision;


 (B) in excess of the agency's statutory authority;


 (C) made through unlawful procedure;


 (D) affected by other error of law;


 (E) not reasonably supported by substantial evidence considering the
reliable and probative evidence in the record as a whole; or


 (F) arbitrary or capricious or characterized by abuse of discretion or
clearly unwarranted exercise of discretion.



Tex. Gov't Code Ann. § 2001.174(2) (West 2008). Otherwise, the reviewing court may affirm the
administrative decision. Id. § 2001.174(1). Pursuant to section 2001.174(2), if the reviewing court
finds any of the six categories of "error" listed and determines that such error prejudiced the
"substantial rights" of the party seeking review, the court must reverse and/or remand the case for
further proceedings. Id. § 2001.174(2).

 Water code section 5.115(a) provides that the term "affected person" means:


 a person who has a personal justiciable interest related to a legal right, duty,
privilege, power, or economic interest affected by the administrative hearing. An
interest common to members of the general public does not qualify as a personal
justiciable interest.



Tex. Water Code Ann. § 5.115(a) (West 2008). The Commission's pertinent rules incorporate the
same definition. See 30 Tex. Admin. Code §§ 55.103 (2011) (Tex. Comm'n on Envtl. Quality,
Requests for Reconsideration and Contested Case Hearings; Public Comment) ("[A]ffected person"
with respect to permit application "has a personal justiciable interest related to a legal right, duty,
privilege, power, or economic interest affected by the [permit] application. An interest common to
members of the general public does not qualify as a personal justiciable interest."), .203(a) (2011)
(Tex. Comm'n Envtl. Quality, Determination of Affected Person) (same).

 Water code section 5.115 provides that the Commission "shall adopt rules specifying
factors which must be considered in determining whether a person is an affected person in any
contested case arising under the air, waste, or water programs within the commission's jurisdiction
and whether an affected association is entitled to standing in contested case hearings." Tex. Water
Code Ann. § 5.115(a). The Commission has promulgated the following rule:



 In determining whether a person is an affected person, all factors shall be considered,
including, but not limited to, the following:


 (1) whether the interest claimed is one protected by the law under which the
application will be considered;


 (2) distance restrictions or other limitations imposed by law on the affected
interest;


 (3) whether a reasonable relationship exists between the interest claimed and the
activity regulated;


 (4) likely impact of the regulated activity on the health and safety of the person,
and on the use of property of the person;


 (5) likely impact of the regulated activity on use of the impacted natural resource
by the person; and


 (6) for governmental entities, their statutory authority over or interest in the
issues relevant to the application.



30 Tex. Admin. Code § 55.203(c).

 The water code does not prescribe a particular procedure through which the
Commission is to determine whether the requestor is an "affected person." See Tex. Water Code
Ann. § 5.115. However, the Commission's rules provide that the requestor must


 identify the person's personal justiciable interest affected by the application,
including a brief, but specific, written statement explaining in plain language the
requestor's location and distance relative to the proposed facility or activity that is
the subject of the application and how or why the requestor believes he or she will
be adversely affected by the proposed facility or activity in a manner not common to
members of the general public.



See 30 Tex. Admin. Code § 55.201(d)(2), (4). 

 Once a request for a contested-case hearing is filed, the executive director, the public
interest counsel, and the applicant may each file a response. See id. § 55.209(d). Among other
things, any such response must specifically address "whether the requestor is an affected person." 
See id. § 55.209(e)(1). (9) The hearing requestor then has the right to submit a written reply to the
response. See id. § 55.209(g).

 The Commission then "evaluates" the hearing request See id. § 55.211(b). The
Commission's evaluation of the hearing request "is not itself a contested case subject to the APA." 
See id. § 55.211(a). After evaluating the request, the Commission has four options. See 30 Tex.
Admin. Code § 55.211(b)-(d). First, the Commission may "determine that a hearing request meets
the requirements of this subchapter," and "shall" grant the request if it is made by an "affected
person" and is (1) timely filed, (2) "pursuant to a right to hearing authorized by law," (3) complies
with the form and content requirements of rule 55.201, and (4) "raises disputed issues of fact that
were raised during the [public] comment period, that were not withdrawn . . . and that are relevant
and material to the [C]ommission's decision on the application." See id. § 55.211(b)(3), (c). In that
instance, the Commission must refer the disputed relevant and material fact issues to SOAH for a
contested-case hearing. See id. § 55.211(b)(3). The Commission's second option is to "determine
that the hearing request does not meet the requirements of this subchapter" and proceed to act on the
permit application without a hearing. See id. 55.211(b)(2). Its third option is to refer the hearing
request itself to SOAH for a contested-case hearing and recommendation "on the sole question of
whether the requestor is an affected person." See id. § 55.211(b)(4). Finally, the Commission has
the discretion to grant a hearing request in the "public interest." See id. § 55.211(d). If the
Commission refers the hearing request to SOAH for a recommendation on the "sole issue of whether
the requestor is an affected person," the hearing request "shall be processed as a contested case under
the APA." See id. § 55.211(b)(4).

 This Court recently held that the same basic principles governing whether a party has
standing to challenge governmental action in court also govern whether a party is an "affected
person" entitled to a contested-case hearing. See City of Waco v. Texas Comm'n on Envtl. Quality,
No. 03-09-00005-CV, 2011 WL 2437669, at *14 (Tex. App.--June 17, 2011, no pet. h.). The
general test for standing is whether there is a real controversy between the parties that will actually
be determined by the judicial declaration sought. See Texas Ass'n of Bus. v. Texas Air Control Bd.,
852 S.W.2d 440, 443-45 (Tex. 1993). The Supreme Court has observed that the "irreducible
constitutional minimum" of individual standing contains three elements: (1) the plaintiff must have
suffered an "injury in fact," an invasion of a legally protected interest that is concrete, particularized,
and actual or imminent rather than conjectural or hypothetical, (2) the injury is fairly traceable to the
challenged action of the defendant and not the independent action of a third party not before the
court, and (3) it must be likely that the injury will be redressed by a favorable decision. Lujan
v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); see Brown v. Todd, 53 S.W.3d 297, 305 (Tex.
2001) ("[W]e may look to the similar federal standing requirements for guidance."). Applying these
principles, in order to establish that it is an "affected person" entitled to a contested-case hearing
with regard to the Leyendekker permit application, the Coalition was required to show that
(1) issuance of the permit as proposed would cause one or more of its members to suffer an injury,
i.e., a concrete and particularized invasion of a legally protected interest that is actual or imminent
as opposed to conjectural or hypothetical, and (2) that the injury would likely be redressed
by a favorable decision on the party's complaints regarding the proposed permit, i.e., the
Commission's refusal to grant the permit or imposition of additional conditions. See City of Waco,
2011 WL 2437669, at *15.

 In City of Waco, this Court elaborated on the nature of the actual or anticipated injury
necessary to give rise to a personal justiciable interest under the water code. Observing that "the
existence of the injury-in-fact required for constitutional standing is conceptually distinct from the
ultimate question of whether the plaintiff has incurred a legal injury--i.e., whether the plaintiff has
a valid claim for relief on the merits"--this Court held that a hearing requestor is required to show
only that "potential harm" would result from issuance of the permit as proposed. Id. at *15. The
required "potential harm" from the permit's issuance must, however, be "more than speculative. 
There must be some allegation or evidence that would tend to show that the [requestor's legally
protected interests] will be affected by the action." Id. at *18 (quoting Save Our Springs Alliance,
Inc. v. City of Dripping Springs, 304 S.W.3d 871, 883 (Tex. App.--Austin 2010, pet. denied)); see
also United Copper v. Grissom, 17 S.W.3d 797, 803-04 (Tex. App.--Austin 2000, pet. dism'd)
("potential harm" that conferred standing was established by United Copper's own data indicating
that its operations would increase levels of lead and copper particulate at Grissom's home and his
child's school, together with proof that Grissom and his child suffered from "serious asthma"); Heat
Energy Advanced Tech., Inc. v. West Dallas Coal. for Envtl. Justice, 962 S.W.2d 288, 295 (Tex.
App.--Austin 1998, pet. denied) ("potential harm" established where association member's house
was located one-and-a-half blocks from facility, permit applicant had acknowledged in another
Commission proceeding that facility emitted odors, and association member claimed to detect strong
odors coming from it).

 The Commission contends that we may not reverse its conclusion that the Coalition
is not an "affected person" because that conclusion is supported by substantial evidence. The
Commission asserts that, in order to determine whether the Coalition met the "affected person"
standard, it was required to find facts. According to the Commission, we are required to review its
fact findings under the "substantial-evidence" standard and consider only whether the evidence, in
its entirety, is enough that reasonable minds could have reached the conclusion the agency must have
reached. See H. G. Sledge v. Prospective Inv. & Trading Co., 36 S.W.3d 597, 602 (Tex.
App.--Austin 2000, pet. denied). When substantial-evidence review applies, the evidence in the
record may actually preponderate against the agency's decision, yet satisfy the substantial-evidence
standard. (10) Id. In City of Waco, this Court addressed a similar argument advanced by the
Commission and concluded that substantial-evidence review on an agency record is simply "not
possible" absent the opportunity to develop that record through a contested-case or other adjudicative
hearing. See City of Waco, 2011 WL 2437669, at *29 (citing Texas Dep't of Ins. v. State Farm
Lloyds, 260 S.W.3d 233, 245 (Tex. App.--Austin 2008, no pet.) and Ramirez v. Texas State Bd. of
Med. Exam'rs, 927 S.W.2d 770, 773 (Tex. App.--Austin 1996, no writ)); see also Citizens to
Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 414-15 (1971) (substantial-evidence review
applied to agency actions "based on public adjudicatory hearing," not to "nonadjudicatory, quasi-legislative" agency proceeding that "is not designed to produce a record that is to be the basis of
agency action--the basic requirement for substantial-evidence review"). In the present case, the
parties agree that the underlying agency proceeding was not an APA contested case. The district
court confined its review to the agency record. Consequently, because the Coalition never had the
opportunity to develop an evidentiary record before the Commission through contested-case or
adjudicative processes, substantial-evidence review is inapplicable and therefore unavailable. See
City of Waco, 2011 WL 2437669, at *30.

 Relying on this Court's opinion in Collins v. Texas Natural Res. Conservation
Comm'n, 94 S.W.3d 876 (Tex. App.--Austin 2002, no pet.), the Commission next contends that
because the proposed permit amendment will impose greater environmental protective measures than
does the current permit, the Coalition cannot be affected or injured by its issuance of the permit so
as to have a personal justiciable interest in opposing it. This Court addressed and rejected a similar
argument in City of Waco:

 That the current legal requirements incorporated into the new permit are "more
protective" than in years past is, standing alone, irrelevant. What matters is that
discharge, run-off, or loading is an acknowledged certainty under the amended
permit, and if this injures the City's legally protected interest, the City would possess
a personal justiciable interest in the enforcement of the current laws regardless of
how the harm compares to that occurring under the previous permit.



City of Waco, 2011 WL 2437669, at *33. As in City of Waco, we hold that to the extent the
Commission denied the Coalition's hearing request based on the premise that the amended
Leyendekker permit would be "more protective" of the environment than the current one, it acted
arbitrarily by relying on a factor that is irrelevant to the Coalition's standing to obtain a hearing. Id.
(citing City of El Paso v. Public Util. Comm'n, 883 S.W.2d 179, 184 (Tex. 1994), and State Farm
Lloyds, 260 S.W.3d at 246).

 The Commission asserts that, in reaching its conclusion that none of the Coalition
members was an "affected person," it "weighed the relevant factors and reached a reasonable
conclusion" that the Coalition's members "were not likely to be adversely affected." In City of
Waco, this Court held that the Commission does not "categorically lack discretion to consider
evidence--through some sort of procedure--when it 'determines' whether a request was 'filed by
an affected person as defined by Section 5.115.'" City of Waco, 2011 WL at *25 (quoting Tex.
Water Code Ann. § 5.556(c)). This Court observed that the Commission, as it does in the present
case, analogized itself to a trial court deciding a plea to the jurisdiction, and further noted the
well-established principle that trial courts, when determining jurisdictional issues such as standing,
are not bound by allegations in pleadings but may--and sometimes must--consider evidence to the
extent necessary to decide the issue. Id. at *24 (citing Texas Dep't of Parks & Wildlife v. Miranda,
133 S.W.3d 217, 226-29 (Tex. 2004), and Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554-55
(Tex. 2000)). And we have previously approved an agency's adoption of the basic analytical
framework applied by trial courts when deciding pleas to the jurisdiction, including consideration
of jurisdictional evidence in addition to the pleadings, in a procedural context similar to the present
one--the education commissioner's determination of his own jurisdiction over appeals under
education code section 7.057 which, like the water code and Commission rule applicable here, also
does not mention evidence. See Tex. Educ. Code Ann. § 7.057 (West 2006); see also Tijerina
v. Alanis, 80 S.W.3d 292, 295 (Tex. App.--Austin 2002, pet. denied); Smith v. Nelson, 53 S.W.3d
792, 794 (Tex. App.--Austin 2001, pet. denied).

 As in the analogous plea-to-the-jurisdiction analysis, however, the Commission's
procedural discretion to resolve issues relevant to hearing requests is limited when it is faced with
disputed facts that are relevant both to a hearing requestor's status as an "affected person" and to the
merits of the permit application. See City of Waco, 2011 WL 2437669, at *34-35. We held that, in
such instances, the Commission is required to apply procedures similar to those identified by the
supreme court as appropriate for a trial court faced with a jurisdictional challenge that requires the
resolution of jurisdictional facts that implicate the merits of the plaintiff's claim. Id. (citing
Miranda, 133 S.W.3d at 228 ("By reserving for the fact finder the resolution of disputed
jurisdictional facts that implicate the merits of the claim or defense, we preserve the parties' right
to present the merits of their case at trial.")). In Miranda, the supreme court concluded that where
jurisdictional facts overlap with the merits of claims or defenses, the trial court lacks discretion to
dismiss a claim at a preliminary stage unless there is conclusive or undisputed evidence negating the
challenged jurisdictional fact. See 133 S.W.3d at 227-28. Otherwise, the trial court cannot grant the
plea to the jurisdiction, and the fact issue is resolved by the trier of fact. Id. Applying this
procedural framework to the Commission's evaluation of a party's status as an "affected person,"
if there are disputed questions of fact that are relevant both to affected person status and to the merits
of the permit application, the Commission has no discretion to resolve those fact issues at this stage
of the proceeding and must refer the hearing request to SOAH for a contested-case hearing to address
those issues. See 30 Tex. Admin. Code § 55.211(b)(4); City of Waco, 2011 WL 2437669, at *35
("Where 'affected person' status turns on [disputed facts that are relevant and material to the
Commission's decision on a permit application], we conclude that Miranda's reasoning would
preclude the Commission from determining those facts without affording the hearing requestor the
adjudicative processes that the Legislature and Commission rules have guaranteed them on the
merits--a contested-case hearing."). The hearing request "shall be processed as a contested case
under APA." 30 Tex. Admin. Code § 55.211(b)(4).

 In the present case, the four material fact issues identified by the executive director
as appropriate for referral to SOAH in the event the Coalition was found to be entitled to a
contested-case hearing on the permit application were issues relevant to whether the proposed permit
complied with current regulatory requirements. And whether the proposed permit complies with
regulatory requirements (disputed facts implicating the merits) is directly related to whether issuing
the permit will cause an injury to Coalition members located downstream of the Leyendekker dairy
(disputed facts regarding affected-person status). For example, a proposed permit that is not in
compliance with requirements designed to eliminate or reduce the regulated activity's environmental
impact on a waterway is more likely to cause some type of injury to those downstream. The hearing
request, therefore, raised questions of fact relevant to both the Coalition's status as an "affected
person" and to the merits of the permit application. Consequently, the Commission was required
to refer the issue to SOAH unless the agency record conclusively negated, through evidence or
otherwise, the Coalition's claim that the dairy's operations under the amended permit could cause
injury to a legally protected interest, i.e., that it is an "affected person."

 The Commission contends, however, that the Coalition "failed to substantiate its
allegations that its members would be adversely affected," and argues that the information provided
in the hearing request is "too sparse to evaluate potential impacts." (Emphasis added.) In its request
for a contested-case hearing, the Coalition stated that three of its members are downstream
landowners who recreate in the waterway and use their property for economic purposes. The request
stated that discharges and runoff from the Leyendekker dairy drain into a creek approximately one
to two miles upstream from the members' properties. The Coalition members each asserted their
own property and economic interests, thereby sufficiently distinguishing their interests from those
of the general public. Cf. Save Our Springs Alliance, Inc., 304 S.W.3d at 878-80 (plaintiffs who
claimed "environmental," "scientific," and "recreational" interests in public water body, but no
property interests affected by alleged pollution of it, had not established injury distinct from that of
general public). In support of its allegation that the personal justiciable interest arose from the fact
that three of its members own property downstream of, and in close proximity to, the Leyendekker
dairy, and that discharges from the dairy would impact the water quality in Gilmore Creek and the
Ranch reservoir, the Coalition also submitted evidence consisting of a map purporting to show the
location of the Coalition members' property and the Ranch's reservoir in relation to the Leyendekker
dairy.

 The executive director concluded that the request "substantially complies with the
requirements of 30 TAC § 55.201," including the requirement that it "identify the person's
justiciable interest affected by the application" and explain "why the requestor believes he or she will
be adversely affected . . . in a manner not common to members of the general public." See 30 Tex.
Admin. Code § 55.201(d). There is nothing in the water code or the rules that requires a hearing
requestor to provide anything more. While prior versions of the water code and rules required a
hearing requestor to supply "competent evidence" in support of its request, that requirement was
eliminated from the water code in 1999. See Act of May 30, 1999, 76th Leg., R.S., ch. 1350, § 1,
1999 Tex. Gen. Laws 4570. The current versions of the water code and the rules contain no express
reference to evidence nor to any procedure contemplating evidence, other than with respect to
hearing requests that the Commission refers to SOAH. See Tex. Water Code Ann. §§ 5.115, .556;
30 Tex. Admin Code §§ 55.201, .209, .211. The Commission's rules, which are more specific with
regard to the procedures for the "affected person" determination, impose what are essentially
pleading requirements--the hearing requestor must file a written hearing request that "identif[ies]
the person's personal justiciable interest affected by the application," including a "brief, but specific,
written statement explaining in plain language the requestor's location and distance relative to the
proposed facility or activity that is the subject of the application and how and why the requestor
believes he or she will be adversely affected by the proposed facility or activity in a manner not
common to members of the public," followed by opportunities to file a "response" and "reply." See
30 Tex. Admin. Code §§ 55.201(c), (d)(2). Although the rules and relevant statutory provisions do
not require that the requestor submit evidence in support of its claim to be an "affected person," the
Coalition did submit evidence supporting its assertions regarding the location of its members'
properties. Accordingly, we need not decide whether statements in a hearing request, standing alone,
can be sufficient to demonstrate that the hearing requestor is an "affected person." (11)

 The agency record does not conclusively negate the existence of the challenged
jurisdictional fact--whether the dairy's operations under the amended permit may have a negative
impact on the water quality of Gilmore Creek. Rather, the executive director simply stated:


 The dairy will not be authorized to discharge except in the event of a 25-year, 10-day
storm event. The new pond sizing required by the draft permit is approximately
60% larger than required by the previous CAFO rules. Previously, retention control
structures (RCSs) were designed to contain a 25-year, 24-hour storm event. In
rainfall amounts, the increase in this area of the state is from a 7.4 inch rainfall event
to a 12.0 inch rainfall. Rainfall events of a 12.0 inch magnitude should be very
infrequent and in such an event, a discharge from the RCSs may still not occur.


 Additionally, runoff from CAFO land management units (LMUs) where waste is land
applied at agronomic rates and using the required management practices meets the
definition of agricultural runoff in the Clean Water Act and is exempt from
regulation under that legislation. See 33 U.S.C. § 1362(14).


 Therefore, the activities conducted at the facility are not expected to affect the health
and safety of Mr. Kilpatrick due to the distance from the facility to his property. His
property is located 2.71 miles downstream from the facility and the RCSs at the
facility are located approximately 3 miles from his property.

 . . .

 

 Therefore, due to the distance of the property downstream, approximately 2.06 miles
from the facility, it is unlikely that the dairy would impact the health and safety of
Mr. Moncrief.

 . . .


 Therefore, due to the distance of the Ranch's property downstream, approximately
2.27 miles from the facility, the chance of an impact of the dairy on the health and
safety of persons residing at or using the Ranch are similar to that of other members
of the general public.



(Emphases added.) The executive director did not elaborate on the factual basis of these assertions
other than to reference its own map illustrating the distance between the Leyendekker dairy and the
property owned by the three Coalition members. No further explanation is provided as to why or
how the Commission should infer from the mere fact of distance that discharges from the dairy
would "not be expected to" or were "unlikely to" impact the health and safety of the members. 
"Even if the unsworn assertions of the Commission's executive director could otherwise be
considered 'evidence,' these sorts of unsupported factual conclusions cannot support a reasonable
inference that those facts exist." City of Waco, 2011 WL 2437669, at *37 (citing Coastal Transp.
Co., Inc. v. Crown Cent. Petroleum Corp., 136 S.W.3d 227, 233 (Tex. 2004) (conclusory or
speculative opinions are "incompetent evidence" that cannot support judgment)); see also Burrow
v. Arce, 997 S.W.2d 229, 235 (Tex. 1999) ("[I]t is the basis of the witness's opinion, and not the
witness's qualifications or his bare opinions alone, that can settle an issue as a matter of law; a claim
will not stand on the mere ipse dixit of a credentialed witness.")

 The executive director also stated that the Coalition members' interests were not
distinguishable from that of the general public "because the permit does not authorize discharges into
water in the state under normal operating conditions." It is undisputed that the proposed permit does
authorize discharges into the water--in the event of a 25-year, 10-day storm event. Because the
Coalition members' property is along the creek in close proximity to the dairy, any such discharges
would impact them differently from the general public. And the general public does not have the
same economic interest in the quality of the Gilmore Creek Reservoir as does the Ranch. To the
extent the Commission's denial of the Coalition's hearing request was based on an implied
determination that the Leyendekker dairy's contributions of waste, nutrients, or pathogens to Gilmore
Creek under the amended permit would have no impact on the water quality in either the creek or
the Ranch's reservoir, the denial was an abuse of discretion. See City of Waco, 2011 WL 2437669,
at *33. The Commission could have determined the extent or amount of the dairy's waste discharge,
run-off, or loadings of Gilmore Creek, and the consequent impact on the three Coalition members,
only by deciding some of the same fact issues that would be relevant to a decision on the merits of
whether to grant the proposed permit. Id.


CONCLUSION

 We hold that the Commission's conclusion that the Coalition was not an "affected
person" was made through improper procedure, was affected by error of law, and was an abuse of
discretion. See Tex. Gov't Code Ann. § 2001.174(2)(C), (D), (F). Accordingly, we reverse the
district court's judgment affirming the Commission's order, reverse the Commission's order, and
remand the case to the Commission for further proceedings consistent with this opinion.



 _____________________________________________

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Reversed and Remanded

Filed: August 2, 2011
1. A dairy that confines and feeds two hundred or more cows for extended periods of time in 
areas that do not sustain vegetation is one type of CAFO. CAFOs are legally considered "point
sources" of water pollution and are required to obtain water-quality permits. See 30 Tex. Admin.
Code §§ 321.31, .32(3), (13), (58), .33 (2011) (Tex. Comm'n on Envtl. Quality, CAFOs).
2. The Coalition is a non-profit Texas corporation whose purpose is the conservation and
environmental protection of the Bosque River watershed and the prevention of and opposition to
pollution in the Bosque River watershed.
3. This Court recently set forth a detailed review of the statutes and rules prescribing the
procedures through which the Commission considers this type of application in City of Waco
v. Texas Comm'n on Envtl. Quality, No. 03-09-00005-CV, 2011 WL 2437669 (Tex. App.--Austin
June 17, 2011, no pet. h.).
4. The City of Waco has been prominent among those advocating stricter regulatory limits
on dairies, such as the Leyendekker dairy, operating in the Bosque River watershed. The dairy
industry in the North Bosque watershed has seen significant growth resulting in controversy among
regulators, scientists, elected officials, and members of the public regarding the extent to which
increasing volumes of animal waste generated by dairy cows may be damaging water quality in the
North Bosque River and ultimately Lake Waco. Lake Waco is a source of the City of Waco's
municipal water supply and is linked to the city's broader economic health.
5. A group or association may request a contested-case hearing if the group or association
meets all of the following requirements:


 (1) one or more members of the group or association would otherwise have
standing to request a hearing in their own right;


 (2) the interests the group or association seeks to protect are germane to the
organization's purpose; and


 (3) neither the claim asserted nor the relief requested requires the participation
of the individual members in the case.


See 30 Tex. Admin. Code § 55.205(a) (2011) (Tex. Comm'n on Envtl. Quality, Request by Group
or Association). The Commission's executive director noted that the Coalition stated in its hearing
request that (1) "it was formed for the purpose of furthering the protection and enhancement of water
quality in the Bosque River watershed; [sic] an interest germane to the organization's specific
purpose," and (2) "neither the claim asserted nor the relief requested requires the participation of the
named Coalition members in the case." 
6. When reviewing the hearing request the executive director found that the disputed issues
as characterized by the Coalition were, in some instances, overbroad to the extent they brought in
issues not raised during the public comment period. The executive director referred to the disputed
issues by the response to comment number noted in the Coalition's request and framed the issues
as he perceived they had been raised by the City of Waco during the pubic comment period. In
contrast, the Office of Public Interest Counsel concluded that each issue raised by the Coalition
"accurately reflects a comment or concern expressed by the City of Waco and does not go beyond
the scope of the City of Waco's comments, although some issues encompass more than one
comment."
7. In section 5.115 of the previous version of the water code, the hearing request also had to
be (1) "reasonable," considering such factors as whether the project would decrease emissions or
discharges of pollutants and "the extent to which the person requesting a hearing is likely to be
impacted by the emissions, discharge, or waste," and (2) supported by "competent evidence." See
Act of May 28, 1995, 74th Leg., R.S., ch. 882, § 1, 1995 Tex. Gen. Laws 4380, 4381. The
legislature deleted the "reasonableness" and "competent evidence" requirements when it amended
the statute in 1999. See Act of May 30, 1999, 76th Leg., R.S. ch. 1350, § 1, 1999 Tex. Gen. Laws
4570 (codified at Tex. Water Code Ann. § 5.115).
8. The executive director determined, and the Commission does not dispute, that the
Coalition's hearing request raised disputed, relevant, and material fact issues regarding the permit
application and otherwise complied with the procedural and substantive requirements that would
entitle the Coalition, if it is an "affected person," to a contested-case hearing on the application. See
Tex. Water Code Ann. § 5.556(c), (d) (West Supp. 2010); 30 Tex. Admin. Code §§ 55.201 (2011)
(Tex. Comm'n on Envtl. Quality, Requests for Reconsideration or Contested Case Hearing),
.211(b)(3), (c) (2011) (Tex. Comm'n on Envtl. Quality, Commission Action on Requests for
Reconsideration and Contested Case Hearing).
9. The responding party may agree that the requestor is an "affected person" but oppose the
contested-case hearing request for a different reason, e.g., that the disputed issues that are the basis
of the hearing request were not raised during the public comment period or were withdrawn. In such
a case, the responding party would still be required to "address" whether the requestor was an
affected person, and presumably would do so by stating its agreement on that issue. See Tex. Admin.
Code § 55.209(e)(1) (2011) (Tex. Comm'n on Envtl. Quality, Processing Requests for
Reconsideration and Contested Case Hearing).
10. As the Court observed in City of Waco, the term "substantial-evidence review" is
sometimes used as a shorthand reference to the entire scope of review under the APA which, while
titled "Review Under Substantial Evidence Rule or Undefined Scope of Review," authorizes reversal
of agency decisions not only where "not reasonably supported by substantial evidence considering
the reliable and probative evidence in the record as a whole," but also when the decisions were "in
violation of a constitutional or statutory provision," "in excess of the agency's statutory authority,"
"made through unlawful procedure," "affected by other error of law," or "arbitrary or capricious or
characterized by abuse of discretion or clearly unwarranted exercise of discretion." See Tex. Gov't
Code Ann. § 2001.174 (West 2008). Our use of the term "substantial-evidence review" in this
opinion is intended in the narrower sense to refer only to a determination of whether the agency order
is reasonably supported by substantial evidence considering the reliable and probative evidence in
the record as a whole. 
11. We note, however, that in a civil proceeding before a trial court, a party seeking to
establish standing to bring a cause of action need only allege facts that affirmatively demonstrate the
court's jurisdiction to hear the cause. See Texas Ass'n of Bus. v. Texas Air Control Bd., 852 S.W.2d
440, 446 (Tex. 1993). The trial court takes allegations in the pleadings as true and construes them
in favor of the pleader. Id.